**UNITED STATES DISTRICT COURT**
**for the**
**MIDDLE DISTRICT OF FLORIDA**
**[Tampa Division]**

99 DEC 30 PM 1: 35

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

| | |
|---|---|
| HITSGALORE.COM, INC., a Florida Corporation | Case No. 99-1387-CIV-T-26C District Judge Richard A. Lazzara Magistrate Judge Elizabeth A. Jenkins |
| Plaintiff, | |
| vs. | |
| JANICE SHELL, JOEL COMM, a/k/a "MAYOR," DANIEL LOEB, a/k/a "MR. PINK," DANIEL MCNEESE, a/k/a "MSHATER," JOHN DOE No. 1, a/k/a "PAUL KERSEY," and JOHN DOE Nos. 2-100, | **FIRST AMENDED COMPLAINT FOR MONETARY DAMAGES, INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff HITSGALORE.COM, INC. ("HITSGALORE", the "Company" or the "Plaintiff"), a Florida Corporation, by and through the undersigned counsel, sues Defendants Janice Shell ("SHELL"), Joel Comm, a/k/a "Mayor" ("MAYOR"), Daniel Loeb, a/k/a "Mr. Pink" ("MR. PINK") Daniel McNeese, a/k/a "mshater" ("MSHATER"), John Doe No. 1, a/k/a "Paul Kersey" ("KERSEY"), and John Does Nos. 2-100 ("John Does 2-100") (collectively the "Defendants"), and alleges:

## INTRODUCTION

1. Between in or about May 1, 1999 and continuing through to the present, Defendants SHELL, MAYOR, MR. PINK, MSHATER, KERSEY, and John Doe Nos. 2-100, intentionally and maliciously published and republished a variety of unprivileged and unprotected false and defamatory statements concerning HITSGALORE in a nationwide **CYBERSMEAR** campaign on electronic bulletin boards maintained by Raging Bull, Inc. ("Raging Bull") and Silicon Investor, Inc. ("Silicon Investor") on the Internet which explicitly state and/or have the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal, dishonest, fraudulent, and criminal business operations, when, in truth and fact, the Defendants knew, should have known, and/or were reckless in not knowing, that such statements were false and libelous *per se*. Such defamatory publications include statements that are libelous *per se*, such as HITSGALORE is being

1   run by "criminals," the Company is operating a "scam," and "Ask the institutional investors if they

2   are buying HITT. You will get a resounding NO! You know why? FRAUD FRAUD FRAUD." Such

3   statements were not merely expressions of the authors' opinions but, rather, were expressed as

4   statements of fact.  Indeed, MR. PINK dared HITSGALORE to sue him when he published the

5   following statement: "These crooks belong in Jail! *** No disclaimer, this is not opinion but a fact

6   and if company doesn't like it, please sue Him [MR. PINK]; discovery will be a treat!" Collectively,

7   the Defendants published and republished hundreds of postings, many of which are false and

8   defamatory, on the Internet to injure HITSGALORE, discredit the business methods of

9   HITSGALORE, destroy the business reputation and goodwill of HITSGALORE, negatively affect

10  public confidence in HITSGALORE,  deter third persons, including customers, shareholders, and

11  others, from dealing with HITSGALORE, and/or to unlawfully drive the price of HITSGALORE

12  common stock into a downward spiral to enable the Defendants and those acting in concert with or

13  under the direction of one or more of them, to illegally profit by selling HITSGALORE common

14  stock short.  Upon information and belief, some or all of the Defendants are being paid, in cash or

15  securities, to post false and defamatory messages on the Internet about HITSGALORE, and receive

16  bonuses for driving the price of the Company's common stock by short sellers.  Upon information

17  and belief, the Defendants operate their "cybersmear" campaign systematically until a desired target

18  price is reached, and then they move on like a "wolf pack" to the next victim.  Indeed, some or all

19  of the Defendants have participated in defaming others on the Internet in the same manner as

20  HITSGALORE, such as American Benefits Group, Inc. [OTC BB: "ABFG"], millionaire.com [OTC

21  BB: "MLRE"], ZiaSun Technologies, Inc. [OTC BB: "ZSUN"], Amazon Natural [OTC BB:

22  "AZNT"], and Liviakis Financial Communications, Inc. The problem with defamation on the

23  Internet by anonymous tortfeasors  has become so severe that it has prompted the Washington State

24  Senate to propose legislation to address the abusive practice.  Indeed,  to conceal, camouflage, and

25  otherwise disguise their true identities, the Defendants  posted their false and defamatory messages

26  about HITSGALORE on the Raging Bull and Silicon Investor Message Boards under fictitious

27  names, aliases, and pseudonyms.  As a direct, intended, and proximate result of the libelous and

28  tortious actions of the Defendants, HITSGALORE has, *inter alia*, suffered irreparable damage in the

1   form of lost good will and professional standing, status and reputation with customers, and third-
2   parties, and has incurred monetary damages in excess of **TWENTY MILLION DOLLARS**
3   **($20,000,000.00).** Specifically, the Defendants tortious conduct has, directly and/or indirectly,
4   caused the market value for HITSGALORE common stock to drop by nearly 75% (i.e.,
5   approximately $750 million), which, in turn, has, *inter alia*, resulted in lost economic expectancies
6   from various advantageous business and contractual relationships with third-parties, including, but
7   not limited to, a loss of $20 million from Company's contract with The Life Foundation Trust ("The
8   Life Foundation"), and exposed the Company to potential liability in two shareholder class action
9   lawsuits. In this action, HITSGALORE seeks to hold each Defendant fully responsible for all
10  damages and irreparable injuries they have caused through monetary relief in excess of Twenty
11  Million Dollars ($20,000,000.00), and injunctive relief in the form of temporary, preliminary, and
12  permanent injunctions restraining and enjoining each of the Defendants from publishing any further
13  false and defamatory messages about HITSGALORE on the Internet.

14                          **JURISDICTION AND VENUE**

15          2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332
16  in that the Plaintiff, a Florida corporation, and the identified Defendants (SHELL, MAYOR, MR.
17  PINK and MSHATER) are citizens of different States, and the amount in controversy for each of the
18  Plaintiff's claims against each of the Defendants exceeds the sum of Seventy Five Thousand Dollars
19  ($75,000.00), exclusive of interest and costs. As described below, the identity and citizenship of the
20  John Doe Defendant, KERSEY, and John Does 2-100, are not known at this time. Thus, the
21  Plaintiff will amend the Complaint after it ascertains the true identities of such Defendants provided
22  that an appropriate basis for federal subject-matter jurisdiction exists with respect to each such John
23  Doe Defendant.

24          3. This Court has personal jurisdiction over Defendants SHELL, MAYOR, MR. PINK and
25  MSHATER through Florida's long-arm jurisdiction statute, Fla. Stat. Ann. § 48.193, which provides,
26  in relevant part, that any person, whether or not a resident of Florida, who personally or through an
27  agent, commits a tortious act within Florida submits to the personal jurisdiction of the courts of
28  Florida for any cause of action arising out of the tortious act committed in Florida. In this action,

1    each Defendant, including, but not limited to, SHELL, MAYOR, MR. PINK and MSHATER,

2    caused false and defamatory statements about HITSGALORE to be published, distributed, and

3    circulated within Florida and elsewhere, and, therefore, committed the torts of libel and tortious

4    interference in Florida, and thus subjected themselves to the long-arm jurisdiction of Florida courts.

5    Fla. Stat. § 48.193(1)(b). Moreover, given the fact that the Defendants, upon information and belief,

6    conspired to defame and damage HITSGALORE, and that several Defendants/members of the

7    conspiracy (SHELL, MAYOR, MR. PINK and MSHATER) caused tortious acts to be committed

8    in Florida in furtherance of the conspiracy, then all of the co-conspirators are subject to the

9    jurisdiction of the state of Florida through its long-arm statute, even if a co-conspirator was not

10    physically present in Florida at the time the tort was committed. Upon information and belief,

11    SHELL, MAYOR, MR. PINK and MSHATER have sufficient minimum contacts with Florida, the

12    forum State, to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance

13    of the suit does not offend 'traditional notions of fair play and substantial justice.'" This Court, upon

14    information and belief, has specific personal jurisdiction over Defendants SHELL, MAYOR, MR.

15    PINK and MSHATER insofar as their contacts with the forum state are related to the cause of action.

16    Specifically, the actions of Defendants SHELL, MAYOR, MR. PINK and MSHATER in posting

17    false and defamatory postings on the Internet were purposefully directed at a citizen of Florida and

18    they must have anticipated being haled into court in Florida to answer for their actions, because

19    Defendants SHELL, MAYOR, MR. PINK and MSHATER knew and could reasonably foresee that

20    the brunt and most devastating economic effects of their statements would primarily be felt by

21    HITSGALORE, a Florida corporation.

22          4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the

23    events or omissions giving rise to the claim occurred in this District and the acts complained of were

24    perpetrated in this District.

25          5. All conditions precedent to commencing this action have occurred, been satisfied, or have

26    been waived.

27                                **PARTIES**

28          6. **HITSGALORE**, a Florida corporation, formerly Systems Communications, Inc.

1  ("Systems Communications"), was incorporated as Florida One Capital Corporation in 1987 and

2  made an initial public offering of its common stock in 1988 as a blank check company for the

3  purpose of acquiring other companies. Systems Communications underwent several corporate name

4  changes from its inception until 1991 when it changed its name to "Systems Communications, Inc."

5  Effective March 19, 1999, Systems Communications and Hitsgalore.com ("Old Hitsgalore"), a

6  Nevada corporation, completed a reorganization and merger (the "Reorganization and Merger

7  Agreement"). Pursuant to the Reorganization and Merger Agreement: (a) Systems Communications

8  transferred its existing business, properties and assets to International Healthcare Solutions, Inc.

9  ("IHSI"), a Florida corporation, and caused IHSI to assume the obligations, debts and liabilities of

10  Systems Communications; and, then (b) Old Hitsgalore was merged into the Systems

11  Communications and Systems Communications changed its name to "Hitsgalore.com, Inc."

12  HITSGALORE  maintains a mailing and registered address in Florida, and its principal executive

13  office in Rancho Cucamonga, California. HITSGALORE is currently engaged in the business of an

14  Internet, business-to-business search engine, and provides a searchable database for businesses

15  bringing people ("hits") to their Internet websites. Significantly, HITSGALORE strives to provide

16  "porn-free" searching capabilities, and does not accept or encourage any porn or adult content

17  listings on its website. The Company derives revenues from, *inter alia*, the sale of sponsorships,

18  keyword bid and rank rights, audio banners, advertising and local city editions. The Company's

19  common stock is quoted under the ticker symbol "HITT" on the OTC Bulletin Board® (OTC BB:

20  HITT). On May 10, 1999, the price for the Company's common stock reached a 52 week high of

21  approximately $20.6875 per share. Following the publication of the false and defamatory statements

22  by the Defendants on the Internet, the price for the Company's common stock has plummeted by

23  nearly 75% to approximately $5.5000 per share as of the last trade on June 4, 1999. As of March

24  31, 1999, the Company had approximately 550 shareholders of record.

25      7. **SHELL**, upon information and belief, is a resident citizen of the State of Texas, and is

26  *sui juris*. At all material times hereto, SHELL was a subscriber to both the Silicon Investor and

27  Raging Bull electronic bulletin boards on the Internet, and posted messages on the message boards

28  for HITSGALORE on Silicon Investor and Raging Bull  under the screen name: "Janice Shell."

1    Upon information and belief, SHELL is responsible in some manner for the occurrences alleged

2    herein, and the Plaintiff's damages as alleged herein were proximately caused by the conduct of

3    SHELL.  At all material times hereto, upon information and belief, SHELL was the agent, servant,

4    employee, representative, and/or co-conspirator of the co-Defendants, and acted within the course

5    and scope of his/her/its authority as an agent, servant, employee, representative, and/or co-

6    conspirator with the permission, consent and/or approval of the co-Defendants during the existence

7    of the relationship and/or during the course and in furtherance of the conspiracy.

8        8. **MAYOR,** upon information and belief, is a resident citizen of the State of Texas, and is

9    *sui juris*.  At all material times hereto, MAYOR was a subscriber to the Raging Bull electronic

10   bulletin board on the Internet, and posted messages on the message boards for HITSGALORE on

11   Raging Bull under the screen name: "mayor."  Upon information and belief, MAYOR is responsible

12   in some manner for the occurrences alleged herein, and the Plaintiff's damages as alleged herein

13   were proximately caused by the conduct of MAYOR.  At all material times hereto, upon information

14   and belief, MAYOR was the agent, servant, employee, representative, and/or co-conspirator of the

15   co-Defendants, and acted within the course and scope of his/her/its authority as an agent, servant,

16   employee, representative, and/or co-conspirator with the permission, consent and/or approval of the

17   co-Defendants during the existence of the relationship and/or during the course and in furtherance

18   of the conspiracy.

19       9. **MR. PINK,** upon information and belief, is a resident citizen of the State of New York,

20   and is *sui juris*.  At all material times hereto, MR. PINK was a subscriber to the Silicon Investor

21   electronic bulletin board on the Internet, and posted messages on the message boards for

22   HITSGALORE on Silicon Investor under the screen name: "MR. PINK."  Upon information and

23   belief, MR. PINK is responsible in some manner for the occurrences alleged herein, and the

24   Plaintiff's damages as alleged herein were proximately caused by the conduct of MR. PINK.  At all

25   material times hereto, upon information and belief, MR. PINK was the agent, servant, employee,

26   representative, and/or co-conspirator of the co-Defendants, and acted within the course and scope

27   of his/her/its authority as an agent, servant, employee, representative, and/or co-conspirator with the

28   permission, consent and/or approval of the co-Defendants during the existence of the relationship

1    and/or during the course and in furtherance of the conspiracy.

2        10.  **MSHATER,** upon information and belief, is a resident citizen of the State of North

3    Carolina, and is *sui juris*.  At all material times hereto, MSHATER was a subscriber to the Silicon

4    Investor electronic bulletin board on the Internet, and posted messages on the message boards for

5    HITSGALORE on Silicon Investor under the screen name: "mshater."  Upon information and belief,

6    MSHATER is responsible in some manner for the occurrences alleged herein, and the Plaintiff's

7    damages as alleged herein were proximately caused by the conduct of MSHATER.  At all material

8    times hereto, upon information and belief, MSHATER was the agent, servant, employee,

9    representative, and/or co-conspirator of the co-Defendants, and acted within the course and scope

10    of his/her/its authority as an agent, servant, employee, representative, and/or co-conspirator with the

11    permission, consent and/or approval of the co-Defendants during the existence of the relationship

12    and/or during the course and in furtherance of the conspiracy.

13        8.  **KERSEY**  is sued under a fictitious name, because the true identity and capacity of this

14    Defendant is unknown to the Plaintiff, except by the fictitious name, alias, and pseudonym "Paul

15    Kersey" used as a screen name to post messages on the message boards for HITSGALORE on

16    Raging Bull.  Upon information and belief, KERSEY is responsible in some manner for the

17    occurrences alleged herein, and the Plaintiff's damages as alleged herein were proximately caused

18    by the conduct of KERSEY.  At all material times hereto, upon information and belief, KERSEY

19    was the agent, servant, employee, representative, and/or co-conspirator of the co-Defendants, and

20    acted within the course and scope of his/her/its authority as an agent, servant, employee,

21    representative, and/or co-conspirator  with the permission, consent and/or approval of the co-

22    Defendants during the existence of the relationship and/or during the course and in furtherance of

23    the conspiracy.   The Plaintiff will amend the Complaint after it ascertains the true identity of

24    KERSEY provided that an appropriate basis for federal subject-matter jurisdiction exists with respect

25    to such John Doe Defendant.

26        12.  **John Does 2-100** are sued under a fictitious name, because the true identities and

27    capacities of these Defendants are unknown to the Plaintiff.  Upon information and belief, John

28    Does 2-100 are responsible in some manner for the occurrences alleged herein, and the Plaintiff's

1   damages as alleged herein were proximately caused by the conduct of John Does 2-100.  At all

2   material times hereto, upon information and belief, John Does 2-100 were the agents, servants,

3   employees, representatives, and/or co-conspirators of the co-Defendants, and acted within the course

4   and scope of his/her/its authority as  agents, servants, employees, representatives, and/or co-

5   conspirators with the permission, consent and/or approval of the co-Defendants during the existence

6   of the relationship and/or during the course and in furtherance of the conspiracy.  The Plaintiff will

7   amend the Complaint after it ascertains the true identity of the John Does 2-100 as appropriate..

8                                **GENERAL ALLEGATIONS**

9                                      **The Internet**

10         13.  The Internet is an international network of interconnected computers.  The Internet

11  enables tens of millions of people to communicate with one another and to access vast amounts of

12  information from around the world. Individuals can obtain access to the Internet through major

13  national "online services" such as America Online, CompuServe, the Microsoft Network, and

14  Prodigy. Anyone with access to the Internet may take advantage of a wide variety of communication

15  and information retrieval methods, including, among others, electronic mail ("e-mail"), automatic

16  mailing list services, "newsgroups," "chat rooms," and the "World Wide Web." All of these methods

17  can be used to transmit text, and  most can transmit sound, pictures, and moving video images.

18  Taken together, these tools constitute a unique medium  known to its users as "cyberspace"-- located

19  in no particular geographical location but available to anyone, anywhere in the world, with access

20  to the Internet.

21                                **The World Wide Web**

22         14. The World Wide Web, also known as the "Web" and "WWW", is the most well-known

23  and highly used means by which individual computer users search for and retrieve information

24  located on the Internet.  Information on the Web is displayed and linked together via a special

25  protocol called a Hypertext Transfer Protocol ("HTTP").  Typically, these links are either blue or

26  underlined, and allow a user to move directly from one web location to another by using the

27  computer mouse to click twice on the underlined or the colored link.  Any user can make material

28  available to other users at addresses on the Web known as "Web Sites" through a computer that is

1     connected telephonically to a Web server. The Web server, or commercial "search engine," enables

2     the user to navigate or "surf" the Web in order to find addresses where the user may wish locate sites

3     on a subject of interest.

4     **Electronic Message Boards on the Internet**

5          15.  Bulletin board systems, also known as message boards, are generally organized with

6     "topics," wherein a number of messages on a specific subject (threads) are contained in sequential

7     order.  Bulletin boards are commonly used by investors to  search for information about companies

8     whose securities are traded on public markets.  Two of the most popular service providers in the

9     latter arena are the Raging Bull and Silicon Investor bulletin boards.  Indeed, Silicon Investor is the

10     World's largest financial discussion website on the Internet.  Messages which are "posted" on

11     bulletin boards on threads regarding issuers are stored for ready and repeated referral and display for

12     weeks, months, or years,  depending upon on how long the service provider maintains messages

13     before purging the same. Messages can be displayed on a computer screen, printed out, downloaded

14     on a hard drive or disk, copied, transmitted and/or forwarded, in whole or in part, to other users.  A

15     user who posts information on a bulletin board is not required to identify themselves to the public,

16     but may remain anonymous by using a fictitious "screen name" or pseudonym that other users will

17     see when reading a posting from them.

18     **The Systems Communications Form 8-K dated February 16, 1999**

19          16.  On or about February 16, 1999, Systems Communications filed a current report on Form

20     8-K (the "Systems Communications Form 8-K") with the Securities and Exchange Commission

21     ("SEC") which announced that Systems Communications had entered into the Reorganization and

22     Merger Agreement with Old Hitsgalore on February 11, 1999, and attached a copy of the same as

23     an exhibit.  A copy of the Systems Communications Form 8-K is attached hereto and incorporated

24     herein by reference as **Exhibit A.**

25          17. At the time the Systems Communications Form 8-K was filed, Systems Communications

26     and <u>not</u> Old Hitsgalore was a registrant with the SEC.  Thus, Old Hitsgalore did not prepare, sign,

27     or file the Systems Communications Form 8-K with the SEC. Indeed, the Systems Communications

28     Form 8-K was prepared, signed, and filed by Edwin B. Salmon, Jr., the Chairman of the Board and

1    Secretary of Systems Communications.  Moreover, and more importantly, Old Hitsgalore was <u>not</u>,
2    at the time the Systems Communications Form 8-K was filed, subject to the periodic and other
3    reporting requirements of Sections13(a) or 15(d) of the Securities Exchange Act of 1934, 15 U.S.C.
4    §§ 78m(a), and 78o(d), and Rules 12b-20 (Additional Information), 13a-1 (Annual Reports on Form
5    10-K), 13a-11 (Current Reports on Form 8-K), 13a-13 (Quarterly Reports on Forms 10-Q and 10-
6    QSB), 15d-1 (Annual Reports on Form 10-K), 15d-11 (Current Reports on Form 8-K), and 15d-13
7    (Quarterly Reports on Forms 10-Q and 10-QSB), promulgated thereunder, 17 C.F.R. §§ 240.12b-20,
8    240.13a-1, 240.13a-11, 240.13a-13, 240.15d-1, 240.15d-11, and 240.15d-13.  Consequently, Old
9    Hitsgalore was also <u>not</u> subject to Regulation S-K (Standard Instructions for Filing Forms under the
10   Securities Act of 1933, the Securities Exchange Act of 1934, and the Energy Policy and
11   Conservation Act of 1975), 17 C.F.R. §§ 229.10-229.915, and Item 401(f) of Regulation S-K relating
12   to disclosure of involvement by executive officers and directors of a registrant in six  narrowly
13   defined categories of legal proceedings.

14       18.  Steve Bradford ("Bradford") was the sole officer and director of Old Hitsgalore.
15   Bradford and Dorian Reed ("Reed") were the principal stockholders of Old Hitsgalore.  Reed was
16   <b>not</b> an officer, director or employee of Old Hitsgalore.  As of in or about February 16, 1999, Reed
17   was <b>not</b> an "executive officer" or "director" of Systems Communications within the meaning of Item
18   401(f) of Regulation S-K, was not a "significant employee" of Systems Communications within the
19   meaning of Item 401(c) of Regulation S-K, was <b>not</b> a "promoter" or "control person" of Systems
20   Communications within the meaning of Item 401(g) of Regulation S-K.

21       19.  As described above, the Reorganization and Merger Agreement was attached to the
22   Systems Communications Form 8-K as an exhibit. The Reorganization and Merger Agreement
23   contained, *inter alia*, representations and warranties (collectively "the Old Hitsgalore Warranties to
24   Systems Communications") from Old Hitsgalore to Systems Communications which provided, in
25   pertinent part, that:

26       (n)  Except as set forth in Schedule ___, **there is no claim, legal action, suit,**
         **arbitration, governmental investigation, or other legal or administrative**
27       **proceeding, nor any order, decree or judgment in progress, pending or in effect**
         or to Hitsgalore.com's [Old Hitsgalore] knowledge threatened, against or relating to
28       **Hitsgalore.com [Old Hitsgalore], its directors, officers or employees** it properties,
         assets or business or the transaction contemplated by this Agreement and

1    Hitsgalore.com [Old Hitsgalore] does not know or have any reason to be aware of
     any basis for the same, including any basis for a claim of sexual harassment or racial
2    or age discrimination.

3    See Section 4.01(n) of the Reorganization and Merger Agreement attached as part of **Exhibit A**

4    (emphasis added).

5          20. At all material times hereto, the Old Hitsgalore Warranties to Systems Communications

6    were and are **TRUTHFUL and ACCURATE**. Specifically, no director, officer, or employee of Old

7    Hitsgalore had any "claim, legal action, suit, arbitration, governmental investigation, or other legal

8    or administrative proceeding, nor any order, decree or judgment in progress, pending or in effect. .

9    ." as of the date Systems Communications Form 8-K was filed with the SEC on February 16, 1999.

10                          **The FTC Civil Action against Reed**

11         21.    Although outside the purview of the Old Hitsgalore Warranties to Systems

12   Communications, Reed, a shareholder of Old Hitsgalore, was sued in February 1998 by the Federal

13   Trade Commission ("FTC") in a civil lawsuit against Internet Business Broadcasting, Inc. ("IBB"),

14   Thomas Maher, IBB's President, Reed, an employee of IBB, and Audrey Reed, for allegedly failing

15   to refund money to customers and allegedly misleading investors about the potential return on

16   investment (the "FTC Civil Action"). IBB, a Nevada corporation, which had no affiliation with Old

17   Hitsgalore, Systems Communications, or HITSGALORE, was engaged in the business of selling

18   billboard advertising space on IBB's Internet business mall and web site.   In mid-1997, after failing

19   to adequately collect revenues from a sufficient number of customers, IBB shut down its business

20   and dissolved. In response to the FTC Civil Action, Reed, appearing *pro se*, served an answer to the

21   FTC Complaint denying all the allegations in April 1998. Between April 1998 and May 1999, Reed

22   received no communications from the FTC regarding the FTC Civil Action and presumed, as a non-

23   lawyer who was unfamiliar with the federal rules of civil procedure and complexities of the litigation

24   process, that the case was no longer pending. On or about May 11, 1999, over one year after he

25   served his answer, and two months after the filing of Systems Communications Form 8-K, Reed was

26   served with a copy of a default judgment in the FTC Civil Action against him and a co-defendant

27   to, *inter alia*,  pay, jointly and severally, $613,110.00 in damages.  The default judgment was

28   entered by the Court on or about April 19, 1999. Upon learning of the entry of the default judgment

1    in the FTC Civil Action against him, Reed, through counsel, contacted the FTC regarding the FTC

2    Civil Action, and is currently exploring his legal options for resolving the dispute, including the

3    possibility of appealing or vacating the judgment.

4    **Disclosure of the Filing of the FTC Civil Action against Reed was not Legally Required**

5         22. Old Hitsgalore had no duty under the Reorganization and Merger Agreement to disclose

6    the existence of the FTC Civil Action to Systems Communications, because Reed was _never_, at any

7    time, a "director," "officer," or "employee" of Old Hitsgalore. Thus, the Old Hitsgalore Warranties

8    to Systems Communications were and are truthful and accurate, and have not been rendered

9    materially misleading by the subsequent discovery that the FTC Civil Action was still, in fact,

10   pending against Reed.

11        23. Old Hitsgalore had no duty under the federal securities laws to disclose that the FTC

12   Civil Action had been filed against Reed as of February 16, 1999 when the Systems Communications

13   Form 8-K was filed with the SEC. Specifically, Old Hitsgalore was _not_, at the time the Systems

14   Communications Form 8-K was filed, a registrant with the SEC, and, therefore, was _not_ subject to

15   the periodic and other reporting requirements of the federal securities laws. In addition, Reed was

16   _not_ an executive officer, director, significant employee, promoter, or control person of Systems

17   Communications as of the date the Systems Communications Form 8-K was filed, and, therefore,

18   was _not_ legally required to disclose the filing of the FTC Civil Action under Items 401(c), 401(f),

19   or 401(g) of Regulation S-K.

20        24. Moreover, even assuming _arguendo_, that Old Hitsgalore was subject to the reporting

21   requirements in connection with the filing of the Systems Communications Form 8-K, and that Reed

22   was an executive officer, director, significant employee, promoter, or control person of Systems

23   Communications as of the date the Systems Communications Form 8-K was filed, disclosure of the

24   filing of the FTC Civil Action was still, nevertheless, **not** legally required under Item 401(f) or

25   Regulation S-K, because it was not a "reportable event" within the meaning thereof. Item 401(f) of

26   Regulation S-K applies only to six enumerated categories of legal proceedings; provided, however,

27   that the person is an executive officer, director, significant employee, promoter, or control person

28   of a registrant with the SEC, the event is material to an evaluation of the ability or integrity of any

1   person in the subject class, and the event occurs during the past five years.   In summary, the six

2   categories are limited only to the following: (a) bankruptcy, insolvency, or receivership petitions by

3   a person in the subject class; (b) criminal convictions or a person in the subject class is the subject

4   of a pending criminal proceeding; (c) temporary or permanent injunction enjoining a person in the

5   subject class from acting in certain regulated capacities in the commodities and securities industry,

6   engaging in any type of business practice, or engaging in any activity in connection with the purchase

7   or sale of any security or commodity in violation of the federal or state securities or commodities

8   laws; (d) federal or state administrative order barring, suspending, or otherwise limiting a person in

9   the subject class from engaging in any activity described above subparagraph (c); (e) court in a civil

10  action or the SEC finds that a person in the subject class has violated federal or state securities laws;

11  and (f) court in a civil action or the Commodities Futures Trading Commission finds that a person

12  in the subject class has violated federal or state commodities laws.  The mere filing a civil complaint

13  by the FTC does not fall within the ambit of any of the categories under Item 401(f) of Regulation

14  S-K, and is not, therefore, a reportable event.   Finally, given the fact that the Systems

15  Communications Form 8-K does not endeavor to even reference Reed by name or background,

16  disclosure of the existence of the FTC Civil Action against Reed was <u>not</u> necessary to make other

17  representations in the filing not materially misleading.

18  <u>**The Merger between Old Hitsgalore and Systems Communication was Completed on**</u>
<u>**March 19, 1999**</u>

19

20      25. On or about March 19, 1999, Systems Communications and Old Hitsgalore completed

21  a reorganization and merger pursuant the Reorganization and Merger Agreement in which: (a)

22  Systems Communications  transferred its existing business, properties and assets to International

23  Healthcare Solutions, Inc. ("IHSI"), a Florida corporation, and caused IHSI to assume the

24  obligations, debts and liabilities of Systems Communications; and, then (b) Old Hitsgalore was

25  merged into the Systems Communications and Systems Communications changed its name to

26  "Hitsgalore.com, Inc."

27  <u>**HITSGALORE's Advantageous Business and Contractual Relationships with The Life**</u>
<u>**Foundation**</u>

28      26.  Following  the  completion  of  the  merger,  HITSGALORE   entered  into  various

1    transactions with The Life Foundation for the sale of its common stock and the purchase by The Life

2    Foundation of Local City Editions ("LCE's") for up to 200 major metropolitan areas and other cities

3    The transactions with The Life Foundation require the payment of up to $120.0 million to

4    HITSGALORE within the next twelve months. The Life Foundation agreed to secure these payment

5    obligations through a pledge and/or assignment of certain assets to HITSGALORE. All of the

6    material terms and conditions of these transactions entered into between HITSGALORE and The

7    Life Foundation were publicly disclosed in a series of press releases issued through the Business

8    Wire wire service. Thus, all of the Defendants had knowledge of the terms and conditions of these

9    transactions between HITSGALORE and The Life Foundation.

10       27.  For example, on or about April 15, 1999, HITSGALORE agreed to issue, in a private

11   transaction, two million shares of its common stock to The Life Foundation for $10 million. The

12   Life Foundation collateralized its obligation to pay for the shares by assigning a collection of postage

13   stamps.  The Life Foundation  has an unconditional and irrevocable obligation to redeem the

14   collateral by payment of the $10 million price for the shares issued, in cash, at the end of twelve

15   months. The Company issued the shares to The Life Foundation  in a private transaction.

16   HITSGALORE publicly announced this transaction on April 16, 1999 in a press release issued

17   through the Business Wire wire service.    Thus, all of the Defendants had knowledge of this

18   transaction between HITSGALORE and The Life Foundation.

19       28. On or about May 10, 1999, HITSGALORE reached an agreement in principle with The

20   Life Foundation for an equity investment of $100 million at $25.00 per share.  Under the terms of

21   the proposed agreement, The Life Foundation is obligated to transfer investment securities to

22   HITSGALORE in exchange for 4 million share of restricted common stock that The Life Foundation

23   would hold pursuant to Lock-Up restriction, subject to shareholding approval and other

24   contingencies. HITSGALORE publicly announced the existence of this agreement on May 10, 1999

25   in a press release issued through the Business Wire wire service. Thus, all of the Defendants had

26   knowledge of this agreement between HITSGALORE and The Life Foundation.

27                      **The Market for HITSGALORE Common Stock**

28       29. The Company's common stock is quoted under the ticker symbol "HITT" on the OTC

1   Bulletin Board® (OTC BB: HITT).  The OTC Bulletin Board® is a regulated quotation service that

2   displays real-time quotes, last-sale prices, and volume information in over-the-counter securities

3   (OTC) securities.  An OTC equity security generally is any equity that is not listed or traded on

4   Nasdaq® or a national securities exchange.  On May 10, 1999, the price for the HITSGALORE

5   common stock reached a  high of approximately $20.6875 per share.  As of on or about May 10,

6   1999, HITSGALORE had approximately 49 million shares issued and outstanding, and a market

7   value of approximately $1 billion based upon the price of $20.6875 per share.

8                           **The May 11, 1999 Bloomberg Report**

9           30.  On May 11, 1999, <u>Bloomberg</u> released a story entitled "Hitsgalore.com Omitted

10  Founder's Link to Fraud in SEC Filing" (the "May 11, 1999 Bloomberg Report") which, upon

11  information and belief, was authored by David Evans ("Evans").  A copy of the May 11, 1999

12  Bloomberg Report is attached hereto and incorporated herein by reference as **Exhibit B**.

13          31.  As the title of the May 11, 1999 Bloomberg Report suggests, Evans' story creates the

14  false and misleading impression that HITSGALORE intentionally and improperly failed to disclose

15  in certain filings with the SEC  that the Company's  "founder," Reed, had been accused by the FTC

16  of making false and deceptive statements to customers of an entity with which Reed had been

17  previously associated (i.e., IBB).

18          32.  Evans' suggestion of improper conduct itself is based on certain misleading statements,

19  inferences, and incorrect conclusions.  For example, the May 11, 1999 Bloomberg Report begins by

20  improperly implying that HITSGALORE had a duty to disclose the existence of the FTC Civil

21  Action against Reed.  Specifically, the May 11, 1999 Bloomberg Report provides, in pertinent part,

22  that:

23          "**Hitsgalore.com Inc.**, an Internet company whose market value soared from $53
            million to $1 billion in three months, **hasn't disclosed its founder was accused of**
24          **cheating customers last year at a previous job.**
            The founder, Dorian Reed, and two co-defendants were ordered by a federal judge
25          in Baltimore last month to pay $613,110 to 100 customers of Internet Business
            Broadcasting, an Internet advertising company that failed last year ["IBB"]."
26
    <u>See</u> **Exhibit B** (emphasis added).
27

28

33. The alleged failure to disclose the information about Reed and the FTC Civil Action is inaccurately explained later by Evans in the May 11, 1999 Bloomberg Report as follows:

> **Reed became chief technology officer of Hitsgalore.com** and Steve Bradford, a business associate not involved with IBB, became president. Both are directors, too. **On Feb. 11, it went public** by merging with Systems Communications Inc., a publicly traded shell company.
> In the merger agreement, **Hitsgalore.com said** there were no suits or governmental investigations against any of its officers, directors or employees. **It didn't disclose the FTC's case against Reed in filings with the Securities and Exchange Commission**.

See **Exhibit B** (emphasis added).

34. The SEC filing referred to by Evans in the May 11, 1999 Bloomberg Report was the Systems Communications Form 8-K which reported that Systems Communications had entered into the Reorganization and Merger Agreement with Old Hitsgalore on February 11, 1999, and attached a copy of the same as an exhibit. See **Exhibit A**. The representation in the Reorganization and Merger Agreement which Mr. Evans suggests was false is the Old Hitsgalore Warranties to Systems Communications. As described in detail above in Paragraphs 16 through 24 of this Complaint, the simple fact is that Reed was not a director, officer or employee of Old Hitsgalore when it was merged into Systems Communication. Either Evans was grossly negligent of this fact, or intentionally ignored it when he investigated and prepared the May 11, 1999 Bloomberg Report. In any event, the statement made in the Reorganization and Merger Agreement relied upon by Evans to suggest impropriety by HITSGALORE was actually **TRUTHFUL** and **ACCURATE** when made by Old Hitsgalore.

35. The May 11, 1999 Bloomberg Report also falsely claims that HITSGALORE "went public" on "Feb. 11" thereby incorrectly implying that HITSGALORE was a registrant with the SEC and had a duty to file periodic and other reports with the SEC at the time the Systems Communications Form 8-K was filed. A plain reading of the Systems Communications Form 8-K makes it clear that Old Hitsgalore would not become a public reporting company unless and until certain reported contingencies took place on or after March 12, 1999 with respect to disposition of an involuntary bankruptcy case against Systems Communications. See the Reorganization and Merger Agreement at Section 3.01 which provides, in relevant part, that: "The Closing of the Merger shall take place as soon as practicable following a hearing on SCI's involuntary bankruptcy case now

1    scheduled for March 12, 1999. . .", and the Recitals which provide, in relevant part, that:
2    "Hitsgalore.com desires to be merged into SCI [Systems Communications] for the purpose of
3    **becoming** a publicly traded company." See **Exhibit A** (emphasis added). Thus, HITSGALORE was
4    not, as Evans incorrectly suggests in the May 11, 1999 Form 8-K, a public company at the time the
5    Systems Communications Form 8-K was filed. In fact, HITSGALORE did not even prepare, or sign
6    the Systems Communications Form 8-K as Evans suggests.

7    36. In addition, Evans falsely states, suggests, and/or implies that HITSGALORE made
8    omissions of material fact in more than one filing with the SEC by negligently or intentionally using
9    the plural form of the term "filings" in the May 11, 1999 Bloomberg Report. After reading the May
10   11, 1999 Bloomberg Report, a reader would be left with the unfair and unjustified impression that
11   HITSGALORE had violated the federal securities laws and the terms of the Reorganization and
12   Merger Agreement, and was committing an ongoing fraud upon shareholders, the SEC, and the
13   investment community at large. The May 11, 1999 Bloomberg Report served as the catalyst for the
14   Defendants to perpetuate a nationwide cybersmear campaign of HITSGALORE on the Internet.
15   Indeed, the Defendants, with actual knowledge of the false and misleading nature of the May 11,
16   1999, or in reckless disregard of the truth, published and republished the May 11, 1999 Bloomberg
17   Report on the Raging Bull and Silicon Investor message boards through hyperlinks to add a false
18   sense of credibility and air of legitimacy to their false and defamatory claims about HITSGALORE.

19   37. HITSGALORE attempted to deal with panicked shareholders and the false buzz and
20   debate created by the May 11, 1999 Bloomberg Report about the integrity and character of the
21   Company, its management, and business activities, by immediately issuing a press release to the
22   public entitled "Hitsgalore.com Responds to Bloomberg Article" on May 11, 1999 through the
23   Business Wire wire service (the "Company's Response to the May 11, 1999 Bloomberg Report").
24   A copy of the Company's Response to the May 11, 1999 Bloomberg Report is attached hereto and
25   incorporated herein by reference as **Exhibit C**. The Company's Response to the May 11, 1999
26   Bloomberg Report provided, in pertinent part, that HITSGALORE stood behind all documents filed
27   with the SEC, and that the Company had not made any fraudulent filing with the SEC or violation
28   of the Reorganization and Merger Agreement with Systems Communications as the May 11, 1999

1    Bloomberg Report states, suggests, and/or implies, and confirmed the existence of the FTC Civil

2    Action and apparent default judgment in connection therewith against Reed. See **Exhibit C**.

### The Cybersmear Campaign

4        38.  Between in or about May 1, 1999 and continuing through to the present, Defendants

5    SHELL, MAYOR, MR. PINK, MSHATER, KERSEY, and John Does 2-100,  intentionally and

6    maliciously   published and republished a variety of unprivileged and unprotected false and

7    defamatory statements  concerning HITSGALORE in a nationwide **CYBERSMEAR** campaign on

8    electronic bulletin boards maintained by Raging Bull and Silicon Investor  on the Internet which

9    explicitly state and/or have the general import, effect, and meaning that HITSGALORE was

10   engaging in illegitimate, illegal, dishonest, fraudulent, and criminal business operations, when, in

11   truth and fact, the Defendants knew, should have known, and/or were reckless in not knowing, that

12   such statements were false and libelous *per se*.  Such defamatory publications include statements that

13   are libelous *per se*, such as HITSGALORE is being run by "criminals," the Company is operating

14   a "scam," and "Ask the institutional investors if they are buying HITT. You will get a resounding

15   NO! You know why? FRAUD FRAUD FRAUD."  Such statements were not merely expressions

16   of the authors' opinions but, rather, were expressed as statements of fact.  Indeed, MR. PINK dared

17   HITSGALORE to sue him when he published the following statement: "These crooks belong in Jail!

18   *** No disclaimer, this is not opinion but a fact and if company doesn't like it, please sue Him [MR.

19   PINK]; discovery will be a treat!" Collectively, the Defendants published and republished hundreds

20   of postings, many of which are false and defamatory, on the Internet to injure HITSGALORE,

21   discredit the business methods of HITSGALORE, destroy the business reputation and goodwill of

22   HITSGALORE, negatively affect public confidence in HITSGALORE,   deter third persons,

23   including customers, shareholders, and others, from dealing with HITSGALORE, and/or to

24   unlawfully drive the price of HITSGALORE common stock into a downward spiral to enable the

25   Defendants and those acting in concert with or under the direction of one or more of them, to

26   illegally profit by selling HITSGALORE common stock short.  Upon information and belief, some

27   or all of the Defendants are being paid, in cash or securities, to post false and defamatory messages

28   on the Internet about HITSGALORE, and receive bonuses for driving the price of the Company's

1    common stock by short sellers.  Upon information and belief, the Defendants operate their

2    "cybersmear" campaign systematically until a desired target price is reached, and then they move on

3    like a "wolf pack" to the next victim.  To conceal, camouflage, and otherwise disguise their true

4    identities under the shroud of anonymity, the Defendants posted their false and defamatory messages

5    about HITSGALORE on the Raging Bull and Silicon Investor Message Boards under fictitious

6    names, aliases, and pseudonyms.

7                              **Shell's False and Defamatory Statements**

8              39. The false and defamatory statements published and republished by SHELL ("SHELL's

9    False and Defamatory Statements") concerning HITSGALORE on electronic bulletin boards

10   maintained by Raging Bull and Silicon Investor on the Internet explicitly state and/or have the

11   general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal,

12   dishonest, fraudulent, and criminal business operations, and were made by SHELL when, in truth

13   and fact, SHELL knew, should have known, and/or was reckless in not knowing, that such

14   statements were false and libelous *per se*.  For example, a  compendium of SHELL's False and

15   Defamatory Statements is attached hereto and incorporated herein by reference as **Composite**

16   **Exhibit D** as if fully set forth herein.  SHELL's False and defamatory statements are of a continuing

17   nature and may have been and continue to be published on bulletin boards and other media of which

18   HITSGALORE is not yet aware.    Representative samples of some of  SHELL's  False and

19   Defamatory Statements include, among others, the following:

20

21

22

23

24

25

26

27

28

| Date/Time | Message | Published | Location |
|---|---|---|---|
| 05/18/99 2:23p.m. Post#6731 | **By: Janice Shell** **Reply To: 6666 by 13M20S8** | Raging Bull | Florida and Elsewhere |

"Right on the money Hroark. I'm positve that suites [*sic*] will go nowhere, for exactly those reasons . . . . . jmo"

Shorters don't short for no reason, and law firms–who, after all, are in it for the money–don't bring class aciton suits for no reason.

My guess is that the suits now pending will be predicated on the following:

1.  Last week and this week HITT stock got smashed. Many shareholders lost a great deal of money.

2.  Why did the stock get smashed? Because Dorian Reed's unsavory past was brought to light.

3.  What has this got to do with HITT? Well, he founded the company, worked for the company, was a director, and is still the largest shareholder.

4.  The most telling point: knowingly or unknowingly (you can guess what I think) in its Form 15c2-11 the company assured that none of its officers or directors had any pending state or federal legal problems.

Frankly, it seems open and shut to me.

| Date/Time | Message | Published | Location |
|---|---|---|---|
| 05/18/99 4:53p.m. Post#6783 | **By: Janice Shell** **Reply To: 6735 by HRoark** | Raging Bull | Florida and Elsewhere |

"Janice? Form 15c2-11, no disclosure was made regarding Dorian? A question, this company had an IPO? when? And was disclosure made then?"

The company didn't do an IPO. They did a reverse merger. However, they did have to file a Form 15c2-11 in order to begin trading as an OTCBB stock using the ticker HITT. They did this in February. As part of the disclosure information required, they volunteered than [*sic*] no officers or directors had any state or federal legal problems.

Not true.

| 1 | 05/19/99 | **By: Janice Shell** | Raging Bull | Florida and |
| 2 | 4:40p.m. | **Reply To: 6986 by SeasideSue** | | Elsewhere |
|   | Post#7067 | | | |

"That's for us to know and for you to find out later!"

For the record: that's probably one of the ten most idiotic statements made on this board. My own favorite for #1 is the guy who said he understood HITT would be taking controlling interest in Yahoo.

How do you feel about con men, Sue? That's what the FTC thinks Dorian Grey, oops, Reed, is.

| 8 | 05/27/99 | **To: WV Mayor (1615)** | Silicon Investor | Florida and |
| 9 | 6:21p.m. | **From: Janice Shell** | | Elsewhere |
|   | Reply#1631 | | | |

Well, Mayor, you've heard of Carlo Ponzi. This is a classic pyramid scheme. Not all (in my opinion unfortunately) are illegal, but many are.

We'll just have to wait and see what happens.

## <u>Mayor's False and Defamatory Statements</u>

40. The false and defamatory statements published and republished by MAYOR ("MAYOR's False and Defamatory Statements") concerning HITSGALORE on electronic bulletin boards maintained by Raging Bull and Silicon Investor on the Internet explicitly state and/or have the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal, dishonest, fraudulent, and criminal business operations, and were made by MAYOR when, in truth and fact, MAYOR knew, should have known, and/or was reckless in not knowing, that such statements were false and libelous *per se.* For example, a compendium of MAYOR's False and Defamatory Statements is attached hereto and incorporated herein by reference as **Composite Exhibit E** as if fully set forth herein. MAYOR's False and defamatory statements are of a continuing nature and may have been and continue to be published on bulletin boards and other media of which HITSGALORE is not yet aware. Representative samples of some of MAYOR's False and Defamatory Statements include, among others, the following:

| Date/Time | Message | Published | Location |
|-----------|---------|-----------|----------|
| 05/11/99 11:20a.m. Post#2986 | **By: mayor** **Reply To: 2984 by mayor** | Raging Bull | Florida and Elsewhere |

Ok, now it may be over. Shoot. Mr. Pink on SI has issued a short to $3. This guy is rarely wrong.  Just providing info folks, that's all.

To: +Jeffry White (8408)
From: +Mr. Pink
Tuesday, May 11, 1999 11:15 AM ET
Reply # of 8411
To All: 4.00pm Announcement cancelled Blooomberg [sic] beat Mr. Pink to story on HITT. Heading to single digits but no longer T4/f; revised to t3/f after price drop.
Target $3.00
Here are a few links from SNAP search on technology chief and convicted scamster
Dorian Reed
Dorian Reed Links
A Snap search yields many interesting links.
. . .
Sorry that this was disseminated ahead of the Day of Reckoning as foretold by Mr. Pin*.
Mr. Pink did not alert Bloomberg. . .He is saddened that He could not share this with His followers and minions. The will be more scams in the future; but ones this juicey come up but a few times a year.

Mr. Pink

| Date/Time | Message | Published | Location |
|-----------|---------|-----------|----------|
| 05/11/99 11:37a.m. Post#2999 | **By: mayor** **Reply To: 2994 by runbob** | Raging Bull | Florida and Elsewhere |

I got out this morning and am NOT short.  However, I don't think people recognize the gravity of the situation here. FRAUD, people, FRAUD.  Whether or not this is directly related to HITT, it IS going to affect the company. It may null and void the Life Foundation Trust agreement and it will almost certainly kill the NASDAQ application.

To everything there is a season. . .

Mayor

| | | | |
|---|---|---|---|
| 05/11/99<br>11:43a.m.<br>Post#3007 | **By: mayor**<br>**Reply To: 3004 by jb144** | Raging Bull | Florida and<br>Elsewhere |

I would like to see how they are going to pull this off. They LIED to the SEC. Notorious shorters on SI are shorting to $3.00. I have watched the group led by Mr. Pink, and they are rarely wrong. Maybe 1 our of 10 time.

You decide what to do, but when I see a company has lied to the Securities and Exchange Commission, it sends up huge red flags regarding the safety of my investment.

Mayor

| | | | |
|---|---|---|---|
| 05/20/99<br>1:09p.m.<br>Post#7347 | **By: mayor**<br>**Reply To: 7329 by Acts 2** | Raging Bull | Florida, and<br>Elsewhere |

>Naw, limberlegs, mayor just expressed his fear and his opinion.

You are correct. I expressed an opinion. But fear? Hardly. It wasn't scary to ride SCMI to SCMID to HITS to HITT and sell for a 700% profit. Would it be scary to jump in now? With FRAUD hanging over the head of this company? Nah, not scary. A bit foolish if you ask me. Go ahead. Ask any brokerage firms if they are recommending HITT to their clients. Ask the institutional investors if they are buying HITT. You will get a resounding NO! You know why? FRAUD FRAUD FRAUD.

Pretty simple to read between the lines here. You "may" hit it big if enough foolish people throw money at this dog, but more than likely, you will end up with a pile of red on your balance sheet.

IMHO,

Mayor

| | | | |
|---|---|---|---|
| 05/20/99<br>4:59p.m.<br>Post#7449 | **By: mayor**<br>**Reply To: None** | Raging Bull | Florida and<br>Elsewhere |

Another SCAM. And you aren't going to make many friends spamming the boards.

Mayor

## Mr. Pink's False and Defamatory Statements

41. The false and defamatory statements published and republished by MR. PINK ("MR. PINK's False and Defamatory Statements") concerning HITSGALORE on electronic bulletin boards maintained by Raging Bull and Silicon Investor on the Internet explicitly state and/or have the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal, dishonest, fraudulent, and criminal business operations, and were made by MR. PINK when, in truth and fact, MR. PINK knew, should have known, and/or was reckless in not knowing, that such statements were false and libelous *per se*.  For example, a compendium of MR. PINK's False and Defamatory Statements is attached hereto and incorporated herein by reference as **Composite Exhibit F** as if fully set forth herein.  MR. PINK's False and defamatory statements are of a continuing nature and may have been and continue to be published on bulletin boards and other media of which HITSGALORE is not yet aware.   Representative samples of some of MR. PINK's False and Defamatory Statements include, among others, the following:

| Date/Time | Message | Published | Location |
|---|---|---|---|
| 05/09/99 9:37p.m. Post#2708 | **To: Mshater (8364) From: Mr. Pink** | Silicon Investor | Florida and Elsewhere |
| | A "flying turd" is a company that Mr. Pink is [*sic*] believes will rise in spite of a valuation difficult to arrive at by traditional valuation measures.   A T3/f is either a fraud or overvalued company that Mr. Pi&f, in His infinite wisdom believes is poised to fall. | | |
| | He will do some work on this potential turd [Hitsgalore] but for now withholds His regal opinion. | | |
| | MP | | |

| | | | | |
|---|---|---|---|---|
| 1 | 05/11/99 | **To: +Jeffry White (8408)** | Raging Bull | Florida and |
| 2 | 11:15 a.m. | **From: +Mr. Pink** | | Elsewhere |
| | | <u>**Reply # of 8411**</u> | | |

3

4   To All: 4.00pm Announcement cancelled Bloomberg beat Mr.
    Pink to story on HITT.

5   Heading to single digits but no longer T4/f; revised to t3/f after
    price drop.
    Target $3.00

6

7   Here are a few links from SNAP search on technology chief and
    convicted scamster
    Dorian Reed

8                    *        *        *

9

10  Sorry that this was disseminated ahead of the Day of Reckoning
    as foretold by Mr. Pin*.
    Mr. P!nk did not alert Bloomberg...He is saddened that He could
    not share this with His followers and minions.

11

12  There will be more scams in the future; but ones this juicy come
    up but a few times a year.

13  Mr. Pink

14  05/11/99    **To: Pluvia (497)**                    Silicon Investor    Florida and
    1:16 p.m.   **From: Mr. Pink**                                          Elsewhere

15  Reply #501

16  of 1527     Or if someone bothered to search on these criminals, they could
                have found this illuminating site.

17              <u>Http://www.ga.to/mmf/mmfow/report1/html</u>

18              You folks that were long were greedy and stupid....listen to Made
                Men such as Pluvia or Mr. Pin& Himself.

19

20              MP

21

22

23

24

25

26

27

28

| | | | |
|---|---|---|---|
| 05/27/99 8:18a.m. Reply 9236 of 9397 | **To: Dr. Voodoo (9224)** **From: Mr. Pink** | Silicon Investor | Florida and Elsewhere |

sHITT 10K is out and it is hysterical!!!!

These criminals have no shame!!!!

http:///www.FreeEDGAR.com/Search/FilingsResults.asp?CIK =94985...
These crooks belong in Jail!

Mr. P$nk

No disclaimer, this is not opinion but a fact and if company doesn't like it, please sue Him; discovery will be a treat!

| | | | |
|---|---|---|---|
| 05/27/99 10:20 a.m. Reply #1538 of 1666 | **To: bob sims (1537)** **From: Mr. Pink** | Silicon Investor | Florida and Elsewhere |

Great line from the 10K

Even sHITT's auditors can see they are going out of business.

These conditions raise substantial doubt about the Company's ability to continue as a going concern.

Mr. P$nk

read the rest of the document, as funny as a barrel of monkeys

| | | | |
|---|---|---|---|
| 05/27/99 12:57 p.m. Reply #9250 of 9264 | **To: Jean-Philippe Chevalier (9248)** **From: Mr. Pink** | Silicon Investor | Florida and Elsewhere |

It's official, David Evans of Bloomberg News wins the prestigious Pinky Award for outstanding journalism on the sHITT story.  Mr. Evans has bravely reported on numerous frauds including BHUB, CLCX, LHSP, ABTX etc.

On behalf of the associates, affiliates, operatives in the filed and other allied members of Mr. P$nk's conspiracy, Congratulations, Mr. Evans!

Mr. P$nk

| | | | |
|---|---|---|---|
| 05/27/99 2:29 p.m. Reply #1593 of 1666 | **To: Auric Goldfinger (1582)** **From: Mr. Pink** | Silicon Investor | Florida and Elsewhere |

So, it would not be innacurate [sic] to say that the company is run by CRIMINALS.

MP

## Mshater's False and Defamatory Statements

42.   The false and defamatory statements published and republished by MSHATER

("MSHATER's False and Defamatory Statements") concerning HITSGALORE on electronic

bulletin boards maintained by Raging Bull and Silicon Investor on the Internet explicitly state and/or

have the general import, effect, and meaning that HITSGALORE was engaging in illegitimate,

illegal, dishonest, fraudulent, and criminal business operations, and were made by MSHATER when,

in truth and fact, MSHATER knew, should have known, and/or was reckless in not knowing, that

such statements were false and libelous *per se*.  For example, a compendium of MSHATER's False

and Defamatory Statements is attached hereto and incorporated herein by reference as **Composite**

**Exhibit G** as if fully set forth herein.  MSHATER's False and defamatory statements are of a

continuing nature and may have been and continue to be published on bulletin boards and other

media of which HITSGALORE is not yet aware.  Representative samples of some of MSHATER's

False and Defamatory Statements include, among others, the following:

| Date/Time | Message | Published | Location |
|---|---|---|---|
| 05/08/99 5:20p.m. Reply#35399 | **To: rodney beasley (32424)** **From: Mshater** | Silicon Investor | Florida and Elsewhere |
| | Are you still following this? | | |
| | http://127.0.0.1:3456/SI/~wsapi/investor/reply-7883751 It is now HITT and they have ran it up to 15. with 50 million shares out, it looks like a true scam. ...more to come MH | | |

| | | | |
|---|---|---|---|
| 05/09/99<br>12:35 p.m.<br>Reply#35419 | **To: Bill Ulrich (35417)**<br>**From: Mshater** | Silicon Investor | Florida and<br>Elsewhere |

*When he was running the 'yougotmoney' thingie, as site<br>called MMF*

Thanks, we now have an official criminal running a scam<br>hitsgalore.com . . .

* * * *

MH

| | | | |
|---|---|---|---|
| 05/09/99<br>2:20p.m.<br>Reply#8365 | **To: Mshater (8364)**<br>**From: Mshater** | Silicon Investor | Florida and<br>Elsewhere |

This Dorian Reed is scum, prying on senior citizens:

http://ga.to/mmf/mmfow/report3.html

We need to take this guy down.

MH

| | | | |
|---|---|---|---|
| 05/10/99<br>2:02p.m.<br>Post#2708 | **By: mshater**<br>**Reply To: 2705 by Bonsai Seattle** | Raging Bull | Florida and<br>Elsewhere |

>>>MH, Do your own DD, find your own sources,

Another poster who joined RB in early March. What<br>hypester.

THIS IS A SCAM

Bet only what you can lose.

MH

| | | | | |
|---|---|---|---|---|
| 1<br>2 | 05/14/99<br>8:42p.m.<br>Post#5663 | **By: mshater**<br>**Reply To:5427 by jwall36** | Raging Bull | Florida and<br>Elsewhere |

3

Lurkers,

4

5

The longs are here to SCAM you. They have MILLIONS of shares to sell you.

6

Please don't make millionaires out of scam artists that steal from the elderly:

7

A MUST READ

8

http://ga.to/mmf/mmfow/report1.html

9

10

This guy is SCUM. He deserves to go to jail. PLEASE!!!!!

11

MH

| | | | | |
|---|---|---|---|---|
| 12<br>13 | 05/15/99<br>11:04p.m.<br>Reply#5919 | **By: mshater**<br>**Reply To: 5852 by bks** | Raging Bull | Florida and<br>Elsewhere |

14

Dorian, we know it is you.

15

16

Get lost you scum bag. Quit trying to rip people off. You are slime.

17

MH

| | | | | |
|---|---|---|---|---|
| 18<br>19 | 05/16/99<br>4:09p.m.<br>Post#5992 | **By: mshater**<br>**Reply To: 2602 by LoolieBelle** | Raging Bull | Florida and<br>Elsewhere |

20

Where did LoolieBelle go?

21

22

who said "all I know is that I have known Steve Bradford for many years and a finer Christian man you'll never meet.."

23

So many aliases . . . . . so many scams.

24

MH

25

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

26

27

28

| | | | |
|---|---|---|---|
| 1 | 06/10/99 | **To: Mama Bear (1357)** | Silicon Investor | Florida and |
| 2 | 1:09p.m. | **From: Mshater** | | Elsewhere |
| | Reply#1358 | | | |

3

Barb,

4

You've shorted BB stock at Waterhouse haven't you.

5

I had NCDR and HITT shorted and they have now
removed them saying they were an illegal short!  They

6

have removed the trades and acted like they had never

7

existed (meaning they covered and pocketed the diff).
This is about 7 grand in profits which is a lot for me.

8

I have only shorted and covered about 15 other BB

9

stocks there.

10

Anybody know my options besides getting another
broker?  These guys are thieves.

11

MH

12

13

### Kersey's False and Defamatory Statements

14

15      43.  The false and defamatory statements published and republished by KERSEY

16  ("KERSEY's False and Defamatory Statements") concerning HITSGALORE on electronic bulletin

17  boards maintained by Raging Bull and Silicon Investor on the Internet explicitly state and/or have

18  the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal,

19  dishonest, fraudulent, and criminal business operations, and were made by KERSEY when, in truth

20  and fact, KERSEY knew, should have known, and/or was reckless in not knowing, that such

21  statements were false and libelous *per se*.  For example, a compendium of KERSEY's False and

22  Defamatory Statements is attached hereto and incorporated herein by reference as **Composite**

23  **Exhibit H** as if fully set forth herein.  KERSEY's False and defamatory statements are of a

24  continuing nature and may have been and continue to be published on bulletin boards and other

25  media of which HITSGALORE is not yet aware.  Representative samples of some of KERSEY's

26  False and Defamatory Statements include, among others, the following:

27

28

1

2

| Date/Time | Message | Published | Location |
|-----------|---------|-----------|----------|
| 05/11/99 9:27a.m. Post#2917 | **By: Paul Kersey** **Reply To: 2915 by spydude** _____ MAJOR TRUST ANNOUNCEMENT #2 The Paul Kersey Lifesaver (You can) Trust (me) has decided to commit 10% of its worth (in dirt) to a bulletin board company [Hitsgalore] with no SEC filings and no audited data whatsoever in return for restricted shares that can not be traded for months at a current valuation of 50% above fair market value. We think this is a wise decision on our behalf and represents a great bargain in the BB market of value and legitimacy. The trading symbol is SCAM. Everyone else please feel free to mimic our Warren Buffet style trading decision by forwarding all your cash to SCAM. | Raging Bull | Florida and Elsewhere |
| 05/11/99 10:03a.m. Post#2933 | **By: Paul Kersey** **Reply To: 2928 by stardance** _____ It is illegal to run mail fraud and stock internet scams. Anyone pointing fingers at the person unmasking the criminals is nothing but a criminal himself. StarD can you tell me why you are defending a known criminal, Dorian Reed, who by anyone's most basic understanding seems to be perpetrating the almost identical fraud tactics with HITT? Please do call matthew@ragingbull because what we have here is the unearthing of a major stock touting scam. This will make an excellent cover story on the Raging Bull home page. (Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**) | Raging Bull | Florida and Elsewhere |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| 05/11/99 | **By: Paul Kersey** | Raging Bull | Florida and |
| 10:25a.m. | **Reply To: 2942 by shadow115** | | Elsewhere |
| Post#2947 | | | |

HITT IS RUN BY KNOWN CRIMINALS!
This is a fact, not an opinion, I repeat and it is painfully obvious that anyone defending Mr. Dorian Reed is a criminal.  Why has noone come forth to answer to the established incidents of fraud already perpetrated by Mr. Reed.

http://www.ftc.gov/opa/1998/9803/ibb.htm

"Internet Business Broadcasting and its principals claimed they operated . . ."

Does this aforementioned fraud sound familiar?
Exactly the same as HITT's "business" model.

What has HITT touted itself as?
Internet banner advertiser with "local editions.

Who is HITT run by?
Known fraud artist Dorian Reed.

Does anyone have any answers or are we just going to bury our heads in the sand or point fingers and shout at those exposing the truth?

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

| | | | | |
|---|---|---|---|---|
| 1 | 05/11/99 | **By: Paul Kersey**<br>**Reply To: 2974 by Paul Kersey** | Raging Bull | Florida and |
| 2 | Post # | | | Elsewhere |

**SEC NON DISCLOSURE**

http://quote.bloomberg.com/analytics/bquote.cgi?story num=46839441&view=story&version

"In the merger agreement, Hitsgalore.com said there were no suits or governmental investigations against any of its officers, directors, or employees. It didn't disclose the FTC's case against Reed in filings with the Securities and Exchange Commission."

In case anyone doesn't think this is serious. What do you think happens when the SEC reviews filings, specifically ones regarding known fraud artists. The possibility of a [sic] trading halt and or immense and imminent.

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

| | | | | |
|---|---|---|---|---|
| 05/11/99 | **By: Paul Kersey** | Raging Bull | Florida and |
| 11:23a.m. | **Reply To: 2984 by mayor** | | Elsewhere |
| Post#2989 | | | |

Does anyone think that pending Life Foundation Trust deal is still in the works?

More appropriately does anyone think the Life Foundation Trust ever existed?

What does anyone think is the fair value of a scam? This one is currently at $500,000,000.

Would anyone disagree if I said that this is still ridiculously overvalued at $10?

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

1

2

| 05/11/99 | **By: Paul Kersey** | Raging Bull | Florida, and |
| 2:48p.m. | **Reply To: 3205 by salc** | | Elsewhere |
| Post#3215 | | | |

3

The low down is that HITT is a SCAM.

4

5

They didn't mention in their SEC filings that Dorian Reed
is a known fraud artist involved in Ponzi schemes, postal
fraud, internet mailing lists, and other assorted get-rich-
quick-scams. Now add that to the fact that HITT has
never reported had any audited financials and guess what
you have. Nothing. This entire charade was just exposed
as another one of Reed's pet projects.

6

7

8

Go back and read some earlier posts for more details.

9

An SEC halt and delisting is imminent.

10

Anyone still waiting for the HITT press release.

11

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT
Rating - **Strong Sell**)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHOEPPL & BURKE, P.A.
ATTORNEYS AT LAW
4800 NORTH FEDERAL HIGHWAY, SUITE 210-A
BOCA RATON, FLORIDA 33431-5176

COMPLAINT

| | | | | |
|---|---|---|---|---|
| 1 | 05/11/99 | **By: Paul Kersey**<br>**Reply To: None** | Raging Bull | Florida, and<br>Elsewhere |
| 2 | Post#3508 | | | |

3 ── 18

**HITT IS AN OLD DORIAN REED SCAM!**

http://www.ftc.gov/opa/1998/9803/ibb.htm

"Internet Business Broadcasting and its principals claimed they operated . . ."

────────────

Q; What's the difference between IBB and HITT?
A: NOTHING.

This guy is so pathetic that he tried to repeat the same scam, of course on a larger scale.
Notice the unbelievable similarities.
IBB sold internet advertising space.
HITT boasts that it sells internet advertising space.
IBB had local/city versions of its supposed "business".
HITT has local/city versions of its supposed "business".
IBB guaranteed investors farcical ridiculous returns on their invested dollars.
HITT claims their stock is worth more and more each day because of a "Trust" investment that never and will never be substantiated.
IBB was busted and taken to court by the Federal government.
HITT.......

Any answers anyone?
Tell me what kind of people would recommend putting your dollars into this kind of scam?

| | | | | |
|---|---|---|---|---|
| 19 | 05/18/99 | **By: Paul Kersey** | Raging Bull | Florida and |
| 20 | 11:00 a.m.<br>Post#6570 | **Reply To: 6557 by landofplenty** | | Elsewhere |

21 ── 28

Will the Fake Trust still be trading imaginary oil for shares valued at $20 when the share price is currently $3. Come on folks, please do yourselves a favor cleanse yourselve and your soul of this mess and admit to being duped. By remaining silent you will allow Dorian Reed to perpetrate this crime to yet another bunch of unsuspecting victims. What all the shattered investors need to do is contact one of the many law firms offering to represent your mutual interests and also contact the FTC and SEC. End this SCAM now!

Contact the FTC . . . SEC . . . . Shiffrin & Barroway, LLP . . . Weiss & Yourman . . . Stull, Stull & Brody . . .

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

COMPLAINT

1

2 | 05/27/99 | **By: Paul Kersey** | Raging Bull | Florida, and
3 | 7:49 p.m. | **Reply To: 8272 by Mr. Hopkins** | | Elsewhere
  | Post#8274

4

5 Listen up Hopkinshill, there is no lawsuit pending against any poster. You've exposed yourself as yet another shill in this revolving door board of Dorian Reed personalities and ASSociates. If this message board were truly uncovered it would reveal the entire IR department of HITT lead by none other than Dorian Reed posting under the name of Mr. Hopkins. Save those amateurish scare tactics for the fellow inmates of your next federal penitentiary.

6

7

8

9 What a joke. Dorian, I would be more concerned with getting your fake passport ready instead of focusing your efforts trying to fruitlessly maintain what little shareholder (aka Dorian Reed) value remains. This is a 100% SCAM. Please RagingBull expose everyone on this board!

10

11

12 (Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

13

14 | 05/28/99 | **By: Paul Kersey** | Raging Bull | Florida, and
15 | 3:36 p.m. | **Reply To: 8440 by Plato409** | | Elsewhere
  | Post#8451

16 PLATO, I PHUCKING HATE CRIMINALS, especially ones that repeat the same phucking pathetic scam over and over on unsuspecting victims and abuse the American market system in their path of personal gains and destruction. Whether or not I am short I share, 100 shares, or 1,000,000 shares is irrelevat [*sic*] and used as a simpleton shill diversionary tactic. My position has no effect on the company if it truly is a worthy company. Regardless, I wasn't the one who didn't disclose my 30 million share position up until a few days ago so do yourself a favor and focus the true repeat offending criminal at hand. Tell me what part of the 50 written articles exposing this SCAM do you not understand and tell me what part of known convict Dorian Reed's press releases do you believe.

17

18

19

20

21

22

23

24

25

26

27

28

| | | | |
|---|---|---|---|
| 1 | 06/05/99 | **By: Paul Kersey** | Raging Bull | Florida, and |
| 2 | 1:16p.m.<br>Post#1455 | **Reply To: 1451 by krptonite** | | Elsewhere |

3

4

5

6

krptonite, if you don't know the HITT story then it would be inappropriate to make quick post in reference to it. You should hope that GDIS is no HITT because HITT was exposed as one of the biggest scams of 1999. Here are some articles if you truly wish to know about the SCAM that is HITT and why everyone should bash it.

7

http://quote.bloomberg.com/analytics/bquote.cgi?storynum=448603007&view=story&version=marketslong99.cfg

8

9

http://quote.bloomberg.com/analytics/bquote.cgi?storynum=49298622&view=story&version=marketslong99.cfg

10

11

12

They are a SCAM run by a convicted felon that is now in the process of withdrawing all its SEC filings because of the associated fraud.  It stands in the face of being delisted/halted.

13

Please do your homework as I have done with HITT and GDIS.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | | | |
|---|---|---|---|
| 06/05/99<br>3:10p.m.<br>Post#9105 | **By: Paul Kersey**<br>**Reply To: 9103 by RAINCHECK** | Raging Bull | Florida, and<br>Elsewhere |

Raincheck, that truly was a last breath. Comparisons to AOL, YHOO, and INTC probably may be considered shill tactics by some people at this point in time. I don't think Andy Grove spent time in a federal prison for wire fraud nor do I believe that AOL had to withdraw all of its past SEC filings because the stench of fraud was so overwhelming tht noone dare be associated with the company.

This is truly one of the most disgusting scams operated by some of the most criminally manipulative felons and supported by the most lowest form of shill. The fact that people are still here touting this dead dog speaks volumes of your character. No sane investing person would on these boards to defend this now? There's only one answer and we all know what it is.

Perhaps the most disgusting part of this charade was the attempted veil of Christianity.
http://biz.yahoo.com/bw/990513/azlifefo1.html

"In addition, to provide financial support for the local, national and international ministries which are based on the principles of the Bible."

(Voluntary Disclosure: ST Rating - **Strong Sell**; LT Rating - **Strong Sell**)

## John Does 2-100 Defamatory Statements

44. The false and defamatory statements published and republished by John Does 2-100 ("John Does 2-100 False and Defamatory Statements") concerning HITSGALORE on electronic bulletin boards maintained by Raging Bull and Silicon Investor on the Internet explicitly state and/or have the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal, dishonest, fraudulent, and criminal business operations, and were made by John Does 2-100 when, in truth and fact, John Does 2-100 knew, should have known, and/or was reckless in not knowing, that such statements were false and libelous *per se*. John Does 2-100 False and defamatory statements are of a continuing nature and may have been and continue to be published on bulletin boards and other media of which HITSGALORE is not yet aware.

**The Aftermath of the Cybersmear Campaign**

45.  As a direct, intended, and proximate result of the libelous and tortious actions of the Defendants, HITSGALORE has, *inter alia*, suffered irreparable damage in the form of lost good will and professional standing, status and reputation with customers, and third-parties, and has incurred monetary damages in excess of **TWENTY MILLION DOLLARS ($20,000,000.00).** Specifically, the Defendants tortious conduct has, directly and/or indirectly, caused the market value for HITSGALORE common stock to drop by nearly 75% (i.e., approximately $750 million), which, in turn, has, *inter alia*, resulted in lost economic expectancies from various advantageous business and contractual relationships with third-parties, including, but not limited to, a loss of $20 million from Company's contract with The Life Foundation (specifically, the Life Foundation reduced the price it was willing to pay from $25 per share to $20 per share for 4 million shares of the Company's common stock), and exposed the Company to potential liability in two shareholder class action lawsuits.

**FIRST CLAIM FOR RELIEF: [LIBEL]**
**(Against All Defendants)**

46.  Plaintiff HITSGALORE realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 45 as if fully set forth herein.

47.  Prior to the publication and republication of the false and defamatory statements by the Defendants, HITSGALORE had valuable contractual and/or business relationships with third-parties under which it had legal rights, and generally enjoyed a reputation in the investment and business community for conducting its business affairs in a legitimate, legal, honest, and upright manner.

48.  Between in or about May 1, 1999 and continuing through to the present, Defendants SHELL, MAYOR, MR. PINK, MSHATER, KERSEY, and John Does 2-100, maliciously published and republished a variety of unprivileged and unprotected false and defamatory statements concerning HITSGALORE in a nationwide cybersmear campaign on electronic bulletin boards maintained by Raging Bull and Silicon Investor on the Internet which explicitly state and/or have the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal, dishonest, fraudulent, and criminal business operations, when, in truth and fact, the Defendants

1  knew, should have known, and/or were reckless in not knowing, that such statements were false and

2  libelous *per se*. Such false and defamatory statements, independently and/or collectively, subject

3  HITSGALORE to hatred, distrust, ridicule, contempt, obloquy, and disgrace, and tend to injure

4  HITSGALORE in its trade and profession, and impute to HITSGALORE conduct, characteristics,

5  and conditions incompatible with the proper exercise of a lawful business, trade, profession, or

6  office.

7        49.  Specifically, the false and defamatory statements referred to above in Paragraph 48

8  include, *inter alia*: (a) the false and defamatory statements published and republished by SHELL

9  ("SHELL's False and Defamatory Statements") concerning HITSGALORE on electronic bulletin

10  boards maintained by Raging Bull and Silicon Investor on the Internet which are identified with

11  particularity in Paragraph 39  above of the Complaint, and are incorporated herein by reference as

12  if fully set forth herein. Copies  of SHELL's False and Defamatory Statements are attached hereto

13  and incorporated herein by reference as **Composite Exhibit D**; (b) the false and defamatory

14  statements published and republished by MAYOR ("MAYOR's False and Defamatory Statements")

15  concerning HITSGALORE on electronic bulletin boards maintained by Raging Bull and Silicon

16  Investor on the Internet which are identified with particularity in Paragraph 40 above of the

17  Complaint, and are incorporated herein by reference as if fully set forth herein. Copies of MAYOR's

18  False and Defamatory Statements are attached hereto and incorporated herein by reference as

19  **Composite Exhibit E**; (c) the false and defamatory statements published and republished by MR.

20  PINK ("MR. PINK's False and Defamatory Statements") concerning HITSGALORE on electronic

21  bulletin boards maintained by Raging Bull and Silicon Investor on the Internet which are identified

22  with particularity in Paragraph 41 above of the Complaint, and are incorporated herein by reference

23  as if fully set forth herein. Copies  of MR. PINK's False and Defamatory Statements are attached

24  hereto and incorporated herein by reference as **Composite Exhibit F**; (d) the false and defamatory

25  statements published and republished by MSHATER ("MSHATER's False and Defamatory

26  Statements") concerning HITSGALORE on electronic bulletin boards maintained by Raging Bull

27  and Silicon Investor on the Internet which are identified with particularity in Paragraph 42 above of

28  the Complaint, and are incorporated herein by reference as if fully set forth herein. Copies  of

MSHATER's False and Defamatory Statements are attached hereto and incorporated herein by reference as **Composite Exhibit G;** and (e) the false and defamatory statements published and republished by KERSEY ("KERSEY's False and Defamatory Statements") concerning HITSGALORE on electronic bulletin boards maintained by Raging Bull and Silicon Investor on the Internet which are identified with particularity in Paragraph 43 above of the Complaint, and are incorporated herein by reference as if fully set forth herein. Copies  of  KERSEY's False and Defamatory Statements are attached hereto and incorporated herein by reference as **Composite Exhibit H**.  SHELL's False and Defamatory Statements, MAYOR's False and Defamatory Statements, MR. PINK's False and Defamatory Statements, MSHATER's False and Defamatory Statements, KERSEY's False and Defamatory Statements, and John Does 2-100 's False and Defamatory Statements, shall be collectively referred to as the "Defendants' False and Defamatory Statements."

50.  Contrary to the false statements contained in the Defendants' False and Defamatory Statements, HITSGALORE has not engaged in  illegitimate, illegal, dishonest, fraudulent, or criminal business operations as described by the Defendants.

51. Each of the Defendants prepared and published their respective false and defamatory statements with actual malice toward HITSGALORE, in wilful and wanton disregard for its rights, and with the intent to injure and permanently damage HITSGALORE in its professional reputation and business.

52.  Each of the Defendants published their respective false and defamatory statements with the reasonable expectation that such statements would be reprinted, republished, recirculated and/or otherwise PERMANENTLY made available to thousands of Internet users and readers on the Raging Bull and Silicon Investor Message Boards.

53. Each of the Defendants knew and expected that the publication and republication of each of their respective false and defamatory statements would injure the business reputation and goodwill of HITSGALORE, discredit the business methods of HITSGALORE, deter third persons, such as customers, shareholders and others, from dealing with HITSGALORE, diminish the market value of HITSGALORE common stock,  and/or  detrimentally affect and otherwise impede the ability of

1    HITSGALORE to conduct its business, trade, and profession.

2    54. Upon information and belief, each of the Defendants further knew and expected that

3    potentially thousands of readers would negatively react to each of their respective false and

4    defamatory statements by engaging in transactions in HITSGALORE common stock that would

5    detriment the Plaintiff and shareholders who held long positions in HITSGALORE common stock,

6    and that each of the Defendants deliberately published such false and defamatory statements to

7    unlawfully drive the price of HITSGALORE common stock into a downward spiral to enable the

8    Defendants and those acting in concert with or under the direction of one or more of them, to

9    illegally profit by selling HITSGALORE common stock short.

10    55. As a direct and proximate result of the publication of the Defendants' False and

11    Defamatory Statements, HITSGALORE has lost advantageous business relationships, good will

12    and professional standing, status and reputation with customers, and third-parties under which it

13    had legal rights, including, but not limited to The Life Foundation, and HITSGALORE has

14    suffered monetary damages in excess of Twenty Million Dollars ($20,000,000.00), and irreparable

15    injury in the form of loss of good will, professional reputation, standing, and stature in the

16    community. In addition, the Defendants libelous conduct has, directly and/or indirectly, caused the

17    market value for HITSGALORE common stock to drop by nearly 75% (i.e., approximately $750

18    million), which, in turn, has, *inter alia*, resulted in lost economic expectancies from various

19    advantageous business and contractual relationships with third-parties, including, but not limited to,

20    a loss of $20 million from Company's contract with The Life Foundation Trust ("The Life

21    Foundation"), and exposed the Company to potential liability in two shareholder class action

22    lawsuits. At this time, it is unknown as to how many additional prospective customers and third-

23    parties who could have or would have otherwise dealt with and transacted business with

24    HITSGALORE, but for the violative activities of the Defendants Thus, the full extent of the

25    damages is indeterminable and the precise amount of damages is unknown, but is at least Twenty

26    Million Dollars ($20,000,000.00).

27    56. Pursuant to Fed. R. Civ. P. 65, and M.D. Fla. L.R. 1.06(b), injunctive relief against the

28    Defendants is appropriate, because: (a) HITSGALORE will suffer irreparable harm in the form of,

1    among other things, loss of good will, professional reputation, standing, and stature in the business

2    community, and will continue to lose  substantial advantageous contractual and/or business

3    relationships unless the *status quo* is maintained; (b) there is no adequate remedy at law for the

4    immeasurable damages that have resulted, and that  will result from the violative conduct of the

5    Defendants; (c) there is a substantial likelihood that HITSGALORE will succeed on the merits

6    because the Defendants intentionally and maliciously defamed the Plaintiff with libelous statements

7    in a nationwide cybersmear campaign; (d) the issuance of injunctive relief will serve the public

8    interest inasmuch as HITSGALORE's interest in maintaining the integrity of advantageous business

9    relationships and goodwill it has worked to establish in the investment and  business community

10   substantially outweighs the Defendants' interest in defaming HITSGALORE; and (e) there is a

11   reasonable and substantial likelihood that the Defendants will continue to engage in such tortious

12   and malicious activities unless enjoined by this Court.

13       57.  Given the permanent nature of the publication and re-republication of the Defendants'

14   False and Defamatory Statements on the Internet, and the continuing efforts of the Defendants to

15   perpetuate the nationwide cybersmear campaign against HITSGALORE through to the date of filing

16   this Complaint, there is a substantial  likelihood that the Defendants will continue to defame, injure,

17   prejudice, and otherwise severely damage the Plaintiff's  business and professional reputation and

18   business and professional dealings in the future.  To prevent such further damage, it is essential that

19   this Court each of the Defendants to remove their respective false and defamatory statements on the

20   Raging Bull and Silicon Investor Message Boards, and any references to the same on the Internet.

21       **WHEREFORE**, Plaintiff HITSGALORE respectfully requests that this Court enter a

22   judgment in favor of HITSGALORE and against Defendants SHELL, MAYOR, MR. PINK,

23   MSHATER, KERSEY, and John Does 2-100  as follows:

24       A.  Award HITSGALORE compensatory damages in the amount of Twenty Million Dollars

25       ($20,000,000.00), in accordance with the proof adduced by the Plaintiff;

26       B.  Temporarily, Preliminarily, and Permanently Enjoin each of the Defendants, and their

27       respective officers, agents, servants, employees, and attorneys, and those persons in active

28       concert or participation with them who receive actual notice of the injunction by personal

1   service or otherwise from, directly or indirectly, publishing false or defamatory information

2   concerning HITSGALORE on any electronic bulletin board on the Internet, including, but

3   not limited to, Raging Bull and Silicon Investor, or through any other communication device,

4   artifice, or contrivance;

5   C.   Order each of the Defendants to remove all messages, postings, reports, or other

6   publications of false or defamatory information concerning HITSGALORE on any electronic

7   bulletin board on the Internet, including, but not limited to, Raging Bull and Silicon Investor,

8   or on any other communication device, artifice, or contrivance, and, to ensure compliance

9   with this aspect of the relief requested, denominate Raging Bull and Silicon Investor as

10  Relief Defendants, if necessary, for limited purpose of requiring them to remove and/or

11  otherwise expunge all such messages, postings, reports, or other publications of false or

12  defamatory information concerning HITSGALORE;

13  D.   Order each of the Defendants to account to HITSGALORE for any and all revenues,

14  profits, gains, or other unjust enrichment that the Defendants have derived from their

15  wrongful actions and to pay to HITSGALORE such amounts as disgorgement of their ill-

16  gotten gains; and

17  E.   Award HITSGALORE such other and further relief as this Court deems just and proper.

18

19  **SECOND CLAIM FOR RELIEF: [TORTIOUS INTERFERENCE WITH**
    **ADVANTAGEOUS CONTRACTUAL AND BUSINESS RELATIONS]**

20  **(Against All Defendants)**

21  58.  Plaintiff HITSGALORE realleges and incorporates by reference the allegations set forth

22  above in Paragraphs 1 through 45 as if fully set forth herein.

23  59.  The Defendants have knowledge of HITSGALORE current, former, and prospective

24  advantageous contractual and/or business relationships with customers, and third-parties under which

25  it had legal rights, including, but not limited to a contractual and business relationship with The Life

26  Foundation.

27  60.  The Defendants intentionally and unjustifiably interfered with HITSGALORE'S current,

28  former, and prospective contractual and/or advantageous business relationships with customers, and

third-parties under which it had legal rights, including, but not limited to, The Life Foundation, by, *inter alia*, engaging in the acts and practices described in this Complaint, specifically paragraphs 30 through 45, with malice toward and a desire to injure HITSGALORE economically, and with wilful and wanton disregard for the rights of HITSGALORE.

61.   As a direct and proximate result of the breach of the prospective advantageous contractual and/or business relationships described above, HITSGALORE has lost advantageous contractual and/or business relationships, good will and professional standing, status and reputation with customers, and third-parties, under which it had legal rights including, but not limited to The Life Foundation, and HITSGALORE has suffered damages in excess of Twenty Million Dollars ($20,000,000.00), and irreparable injury in the form of loss of good will, professional reputation, standing, and stature in the community.   At this time, it is unknown as to how many additional prospective customers and third-parties who could have or would have otherwise dealt with and transacted business with HITSGALORE, but for the violative activities of the Defendants Thus, the full extent of the damages is indeterminable and the precise amount of damages is unknown, but is at least Twenty Million Dollars ($20,000,000.00).

62.   Pursuant to Fed. R. Civ. P. 65, and M.D. Fla. L.R. 1.06(b), injunctive relief against the Defendants is appropriate, because: (a) HITSGALORE will suffer irreparable harm in the form of, among other things, loss of good will, professional reputation, standing, and stature in the business community, and will continue to lose substantial advantageous contractual and/or business relationships unless the *status quo* is maintained; (b) there is no adequate remedy at law for the immeasurable damages that have resulted, and that will result from the violative conduct of the Defendants; (c) there is a substantial likelihood that HITSGALORE will succeed on the merits because the Defendants tortiously interfered with prospective and existing advantageous contractual and/or business relationships with customers, and third-parties; (d) the issuance of injunctive relief will serve the public interest inasmuch as HITSGALORE's interest in maintaining advantageous business relationships and goodwill it has worked to establish in business and investment community substantially outweighs the Defendants' interest in tortiously interfering with HITSGALORE's advantageous contractual and/or business relationships; and (e) there is a reasonable and substantial

1    likelihood that the Defendants will continue to engage in such tortious and malicious activities unless

2    enjoined by this Court.

3         **WHEREFORE,** Plaintiff HITSGALORE respectfully requests that this Court enter a

4    judgment in favor of HITSGALORE and against Defendants SHELL, MAYOR, MR. PINK,

5    MSHATER, KERSEY, and John Does 2-100 as follows:

6         A. Award HITSGALORE compensatory damages in the amount of Twenty Million Dollars

7         ($20,000,000.00), in accordance with the proof adduced by the Plaintiff;

8         B. Temporarily, Preliminarily, and Permanently Enjoin each of the Defendants, and their

9         respective officers, agents, servants, employees, and attorneys, and those persons in active

10        concert or participation with them who receive actual notice of the injunction by personal

11        service or otherwise from, directly or indirectly, publishing false or defamatory information

12        concerning HITSGALORE on any electronic bulletin board on the Internet, including, but

13        not limited to, Raging Bull and Silicon Investor, or through any other communication device,

14        artifice, or contrivance;

15        C.  Order each of the Defendants to remove all messages, postings, reports, or other

16        publications of false or defamatory information concerning HITSGALORE on any electronic

17        bulletin board on the Internet, including, but not limited to, Raging Bull and Silicon Investor,

18        or on any other communication device, artifice, or contrivance, and,  to ensure compliance

19        with this aspect of the relief requested, denominate Raging Bull and Silicon Investor as

20        Relief Defendants, if necessary, for limited purpose of requiring them to remove and/or

21        otherwise expunge all such messages, postings, reports, or other publications of  false or

22        defamatory information concerning HITSGALORE;

23        D.  Order each of the Defendants to account to HITSGALORE for any and all revenues,

24        profits, gains, or other unjust enrichment that the Defendants have derived from their

25        wrongful actions and to pay to HITSGALORE such amounts as disgorgement of their ill-

26        gotten gains; and

27        E. Award HITSGALORE such other and further relief as this Court deems just and proper.

28

## THIRD CLAIM FOR RELIEF: CIVIL CONSPIRACY
### (Against All Defendants)

63. Plaintiff HITSGALORE realleges and incorporates by reference the allegations set forth above in Paragraphs 1 through 45 as if fully set forth herein.

64. Beginning on or about May 1, 1999 and continuing through to the present, the Defendants, upon information and belief, knowingly, willfully, and maliciously conspired together to tortiously interfere with the Plaintiff's advantageous contractual and/or business relationships, and to defame the Plaintiff in a nationwide "cybersmear" campaign on the Internet with the specific intent to injure HITSGALORE, discredit the business methods of HITSGALORE, destroy the business reputation and goodwill of HITSGALORE, negatively affect public confidence in HITSGALORE, deter third persons, such as customers, shareholders and others, from dealing with HITSGALORE and/or, upon information and belief, to unlawfully drive the price of HITSGALORE common stock into a downward spiral to enable the Defendants and those acting in concert with or under the direction of one or more of them, to illegally profit by selling HITSGALORE common stock short.

65. Upon information and belief, the common purpose and object of the conspiracy by the Defendants was to injure HITSGALORE, destroy the business reputation and goodwill of HITSGALORE, deter third persons from dealing with HITSGALORE and/or, upon information and belief, to unlawfully drive the price of HITSGALORE common stock into a downward spiral to enable the Defendants and those acting in concert with or under the direction of one or more of them, to illegally profit by selling HITSGALORE common stock short.

66. In furtherance of the conspiracy, the Defendants, and those acting in concert with or under the direction of one or more of them, committed various overt acts, including, but not limited to, printing, publishing, republishing, circulating and/or otherwise making available to thousands of Internet users including, upon information and belief, brokers, business partners, investors, shareholders, and other members of the investing public, false, defamatory, and malicious messages on the Raging Bull and Silicon Investor Message Boards about HITSGALORE which had the general import, effect, and meaning that HITSGALORE was engaging in illegitimate, illegal, fraudulent, and criminal business operations.

67.   As a direct and proximate result of the conspiratorial acts of the  Defendants, HITSGALORE has lost advantageous contractual and/or business relationships, good will and professional standing, status and reputation with customers, and third-parties under which it had legal rights, including, but not limited to The Life Foundation, and HITSGALORE has  suffered damages in excess of Twenty Million Dollars ($20,000,000.00),  and irreparable injury in the form of  loss of good will, professional reputation, standing, and stature in the community. In addition, the Defendants conspiratorial conduct has, directly and/or indirectly, caused the market value for HITSGALORE common stock to drop by nearly 75% (i.e., approximately $750 million), which, in turn, has, *inter alia*, resulted in lost economic expectancies from various advantageous business and contractual relationships with third-parties, including, but not limited to, a loss of $20 million from Company's contract with The Life Foundation, and exposed the Company to potential liability in two shareholder class action lawsuits. At this time, it is unknown as to  how many additional prospective customers and third-parties who could have or would have otherwise dealt with and transacted business with HITSGALORE, but for the violative activities of the Defendants Thus, the full extent of the damages is indeterminable and the precise amount of damages is unknown, but is at least Twenty Million Dollars ($20,000,000.00).

**WHEREFORE**, Plaintiff HITSGALORE respectfully requests that this Court enter a judgment in favor of HITSGALORE and against Defendants SHELL, MAYOR, MR. PINK, MSHATER, KERSEY, and John Does 2-100  as follows:

A. Award HITSGALORE compensatory damages in the amount of Twenty Million Dollars ($20,000,000.00), in accordance with the proof adduced by the Plaintiff; and

B. Award HITSGALORE such other and further relief as this Court deems just and proper.

1

## JURY TRIAL DEMAND

2        68.  Pursuant to Fed. R. Civ. P. 38(b) and M.D. Fla. L.R. 1.06(a), HITSGALORE hereby

3    demands a trial by jury on all issues triable by a jury as a matter of right.

4

5    Dated: December 29, 1999              Respectfully Submitted,
    Boca Raton, Florida

6        **SCHOEPPL & BURKE, P.A.**
    Counsel for the Plaintiff HITSGALORE.COM, Inc.

7        4800 North Federal Highway, Suite 210-A
    Boca Raton, Florida 33431-5176

8        Telephone: (561) 394-8301
    Facsimile: (561) 393-6541

9        By: _____

10       Carl F. Schoeppl, Esq., Trial Counsel
    Florida Bar No. 818518

11       Daniel J. Becka, Esq.
    Florida Bar No. 137601

12

13

14   C:\clients\Hitsgalore-Shell\PLeadings\First.Amended.Complaint.wpd

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT



UNITED STATES SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

Form 8-K
CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(D) OF THE SECURITIES EXCHANGE ACT OF 1934

Date of Report :Date of earliest event reported) February 11, 1999

SYSTEMS COMMUNICATIONS, INC.
-------------------------------------------------------------------
:Exact name of Registrant as specified in its charter)

FLORIDA                    000-26668          65-0036344
-------------------------------------------------------------------
:State or other jurisdiction    :Commission      (I.R.S Employer
of incorporation or organization)   file Number)   Identification No.)

4707 140th Avenue North, Suite 107, CLEARWATER, FLORIDA      33762
-------------------------------------------------------------------
:Address of principal executive offices)          (ZIP Code)

:727) 530-4800
-------------------------------------------------------------------
Registrant's telephone number, including area code

EXHIBIT

A

2

SYSTEMS COMMUNICATIONS, INC.

Item 1. Changes in Control of Registrant.

On February 11, 1999, Systems Communications, Inc. (the "Company" or "Registrant") and Hitsgalore.com, Inc., a Nevada Company ("Hitsgalore"), entered into a Reorganization and Merger Agreement (the "Reorganization and Merger Agreement"). In connection with the Reorganization and Merger Agreement, the Company is to:

(i) effect, prior to the merger (the "Merger"), a reverse split of its issued and outstanding common stock and the common stock underlying all issued, outstanding and unexpired common stock purchase options, warrants and other rights to purchase its common stock in an approximate ratio of one share for each six to seven shares, options, warrants and rights so that the aggregate of the issued and outstanding shares and shares to be issued and outstanding upon exercise of such options, warrants and other rights will be 8.0 million shares;

(ii) transfer all of the Company's business, property and assets, tangible and intangible, to International Healthcare Solutions, Inc. ("IHSI"), a newly-formed wholly-owned subsidiary of the Company, in exchange for 20.0 million shares of IHSI's common stock;

(iii) cause IHSI to assume all of the debts, liabilities and obligations of the Company, advise all holders of the debts, liabilities and obligations of the Company regarding such assumption, and use the Company's best efforts to obtain releases from the holders of such debts, liabilities and obligations and irrevocably indemnify Hitsgalore against all of such debts, liabilities and obligations;

(iv) pay, at closing of the Merger, from the proceeds, if any, from the exercise of common stock purchase options and warrants all or a portion of the debts, liabilities and obligations of the Company to be assumed by IHSI and for which releases are not obtained; and

(v) transfer into an escrow or trust for the benefit of the Company's stockholders with a dividend record date of the business day next preceding the closing date of the Merger (the "Closing") of all of the 20.0 million shares of IHSI common stock referred to in (ii) above (the "Shares"), subject to as to delivery to such stockholders out of such escrow or trust to the effectiveness of a registration statement to be filed by IHSI under the Securities Act of 1933, as amended, covering the dividend distribution of the Shares to the Company's stockholders.

Following the reorganization of the Company, as described in the preceding paragraph, Hitsgalore, a privately owned company, is to be merged into the Company in exchange for the conversion of all of the issued and outstanding stock of Hitsgalore into 37.675 million shares of the Company's common stock. The Reorganization and Merger Agreement also provides for the issuance of up to an additional 4.0 million shares of the Company's common stock to consultants and professionals rendering services in connection with the proposed reorganization and merger and for acquisition costs and fees. Following the Merger, the name of the Company is to be changed to Hitsgalore (hereinafter referred to as the Company or Hitsgalore) and assuming consummation of the Reorganization and Merger Agreement, the Company will have approximately 49.675 million shares of common stock issued and outstanding

3

Closing of the Merger is to take place as soon as practicable following resolution of the pending involuntary bankruptcy proceeding against the Company.

Assuming the Reorganization and Merger Agreement is consummated and all issued, outstanding and unexpired common stock purchase options, warrants and other rights to purchase the Company's common stock are exercised the existing stockholders of the Company would own 16.1% of Hitsgalore after consummation of the Merger and, subject to an effective registration statement under the Securities Act of 1933, as amended, 100% of IHSI.

Following the Merger, the Board of Directors and Management of Hitsgalore will become the directors and management of the Company. The President, Secretary, Treasurer and sole director of Hitsgalore is Steve Bradford. Mr Bradford, for the past five years, has been a consultant to the manufacturing, real estate and telecommunications industries and Chief Operating Officer of a direct mail company.

Item 2. Acquisition or Disposition of Assets.

In connection with the Reorganization and Merger Agreement, the Registrant is to acquire by merger all of the business and assets of Hitsgalore and is to transfer all of its business, property and assets, tangible and intangible, to IHSI, a newly-formed wholly-owned subsidiary of the Registrant, in exchange for 20.0 million shares of IHSI's common stock and cause IHSI (i) to assume all of the debts, liabilities and obligations of the Registrant, (ii) advise all holders of the debts, liabilities and obligations of the Registrant regarding such assumption, and use the Company's best efforts to obtain releases from the holders of such debts, liabilities and obligations and (iii) irrevocably indemnify Hitsgalore against all of such debts, liabilities and obligations.

Hitsgalore was organized in July 1998 and began beta operations in August 1998  It is engaged in the business as an internet search engine on the world wide web, has completed its beta testing and launched its website in November 1998  Hitsgalore reported revenues of less than $10,000 for the year ended December 31, 1998 and had revenues of $73,100 in January 1999.

Item 7  Financial Statements and Exhibits.

 (a) Financial Statements

Financial Statements for Hitsgalore will be filed by amendment hereto within sixty days following the date hereof as permitted by Form 8-K.

 (b) Pro Forma Financial Information

Pro Forma financial information for the Company and Hitsgalore will be filed by amendment hereto within sixty days following the date hereof as permitted by Form 8-K.

 (c) Exhibits

2.1 Form of Reorganization and Merger Agreement, dated February 11, 1999 between Systems Communications, Inc. and Hitsgalore.com. Inc.

4

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934,
the registrant has duly caused this report to be signed on its behalf
by the undersigned thereunto duly authorized.

SYSTEMS COMMUNICATIONS, INC.              Date: February 16, 1999


By   /s/ Edwin B. Salmon, Jr.
-------------------------------------
  Edwin B Salmon, Jr
  Chairman of the Board and Secretary

Exhibit 2 1

REORGANIZATION AND MERGER AGREEMENT

THIS REORGANIZATION AND MERGER AGREEMENT, made and entered into on February ___, 1999, by and between Systems Communications, Inc., a Florida corporation, ("SCI") and Hitsgalore.com, Inc., a Nevada corporation, ("Hitsgalore com")

W I T N E S S E T H :

WHEREAS, SCI desires to reorganize its business and affairs and to acquire Hitsgalore.com by statutory merger; and

WHEREAS, Hitsgalore.com desires to be merged into SCI for the purpose of becoming a publicly traded company;

NOW, THEREFORE, in consideration of the premises herein before set forth, reorganization of SCI as provided herein in reliance hereon and the mutual promises and respective representations and warranties of the parties, one to another made herein, and the reliance of each party upon the other(s) based hereon and other good and valuable consideration, the receipt and sufficiency of which the parties acknowledge, the parties agree, for purposes of consummating the plan of reorganization and merger, as follows:

ARTICLE I

PRELIMINARY MATTERS

Section 1.01. Recitals   The parties acknowledge the recitals herein above set forth in the preamble are correct, are, by this reference, incorporated herein and are made a part of this Agreement.

Section 1.02. Exhibits and Schedules.  Exhibits (which are documents to be executed and delivered at the Closing by the party identified therein or in the provision requiring its delivery) and Schedules (which are statements setting forth information about Hitsgalore.com) referred to herein and annexed hereto are, by this reference, incorporated herein and made a part of this Agreement. as if set forth fully herein.

Section 1.03. Use of words and phrases.  Natural persons may be identified by last name, with such additional descriptors as may be desirable. The words "herein," "hereby," "hereunder," "hereof," "herein before," "hereinafter" and any other equivalent words refer to this Agreement as a whole and not to any particular Article, Section or other subdivision hereof. The words  terms and phrases defined herein and any pronoun used herein shall include the singular, plural and all genders.  The word "and" shall be construed as a coordinating conjunction unless the context clearly indicates that it should be construed as a copulative conjunction.

Section 1.04. Accounting terms.  All accounting terms not otherwise defined herein shall have the meanings assigned to them under generally accepted accounting principles unless specifically referenced to regulatory accounting principles.

Section 1.05. Calculation of time lapse or passage; Action required on holidays.  When a provision of this Agreement requires or provides for the calculation of the lapse or passage of a time period, such period shall be calculated by treating the event which starts the lapse or passage as zero; provided, that this provision shall not apply to any provision which specifies a certain day for action or payment, e.g. the first day of each calendar month.  Unless otherwise provided, the term "month" shall mean a period of thirty days and the term "year" shall mean a period of 360 days, except that the term "calendar year" shall mean the actual calendar year period.  If any calendar day on which action is required to be taken or payment is required to be made under this Agreement is not a Business Day (Business Day being a day on which national banks are open for business where the actor or payor is located), then such action or payment shall be taken or made on the next succeeding Business Day.

Section 1.06. Use of titles, headings and captions.  The titles, headings and captions of articles, sections, paragraphs and other subdivisions contained herein are for the purpose of convenience only and are not intended to define or limit the contents of said articles, sections, paragraphs and other subdivisions

ARTICLE II

TERMS OF THE TRANSACTIONS

Section 2.01. Reorganization of SCI.  Prior to the merger of

Hitsgalore.com into SCI (the "Merger"), and as a condition precedent to the
Merger, SCI shall accomplish a reorganization of its business and affairs:

(a)  SCI will reverse split its issued and outstanding common stock and
the common stock underlying all issued, outstanding and unexpired common stock
purchase options, warrants and other rights to purchase its common stock such
that the aggregate of the issued and outstanding shares and shares to be
issued and outstanding upon exercise of such options, warrants and other
rights is eight million shares.

(b)  SCI will transfer all of its business, property and assets,
tangible and intangible, to International Healthcare Solutions, Inc. ("IHSI")
in exchange for twenty million shares of IHSI's common stock.

(c)  IHSI will assume all of the debts, liabilities and obligations of
SCI, fixed, contingent and unknown, will advise all such claim holders against
SCI regarding such assumption and obtain a release of SCI from its debts,
liabilities and obligations by the holders thereof and will unconditionally
and irrevocably indemnify SCI against all, any and every such debt, liability
and obligation, whether fixed, contingent or unknown; provided, that SCI shall
pay at the Closing, from the proceeds, if any, from the exercise of common
stock purchase options and warrants outstanding on the date hereof, all such
debts, liabilities and obligations of which SCI is not released.

(d)  SCI will transfer into an escrow or a trust for the benefit of
SCI's stockholders of record on a record date which will be the Business Day
next preceding the Closing of the Merger of Hitsgalore.com into SCI, as
provided in Section 2.02, all of the IHSI shares which SCI owns (consisting of
twenty million shares) which shares shall be restricted and represented by a
single, global certificate, subject to an irrevocable resolution by SCI's
board of directors declaring a dividend in kind in the IHSI shares to SCI's
stockholders of record on such record date, subject as to delivery to such
stockholders out of such escrow or trust to the effectiveness of a
registration statement to be filed by IHSI under the Securities Act of 1933,
as amended, to cover the distribution of such dividend.

(e)  Hitsgalore.com shall have no liability or obligation to see to SCI
or IHSI's performance of their respective obligations under Section 2.01.

Section 2.02.  Merger transaction.  Immediately following the
reorganization provided in Section 2.01, Hitsgalore.com will be merged into
SCI in the Merger, and the parties shall file articles of merger, containing a
plan of merger, in their respective jurisdictions, which plan of merger will
provide for a statutory merger of Hitsgalore.com (the disappearing
corporation) into SCI (the surviving corporation), the conversion of the
issued and outstanding common stock of Hitsgalore.com into thirty-seven
million six hundred seventy five thousand shares of common stock of SCI, the
continuation of SCI's articles of incorporation and bylaws, as amended
respectively, as the articles of incorporation and bylaws of the surviving
corporation, the directors approved by Hitsgalore.com as the directors of the
surviving corporation, and such other provisions consistent with the terms and
intents of this Agreement as may be required by the laws of the respective
jurisdictions for the consummation of the Merger.

Section 2.03.  Change of SCI's name to Hitsgalore.com, Inc.; Foreign
qualification or change of state of incorporation.  On the Business Day
following the Business Day on which the articles of merger provided in Section
2.02 are filed, SCI will file articles of amendment to its articles of
incorporation changing the name of SCI to "Hitsgalore.com, Inc."  SCI shall
qualify to do business as a foreign corporation in the state of California or,
in the alternative, change its state of incorporation by further statutory
merger for that purpose to the state of California.

Section 2.04.  Press releases.  At the date SCI is required to file and
does file a report pursuant to the requirements of the Securities Exchange Act
of 1934, as amended, reporting the proposed transactions contemplated by this
Agreement, SCI will issue a press release approved by Hitsgalore.com
announcing the transactions, summarizing their pertinent terms and providing
such other information as the parties may mutually agree.  Following the
Closing, SCI will issue a press release announcing the consummation of the
transactions contemplated by this Agreement.

Section 2.05.  Stock compensation.  Except as otherwise approved by
Hitsgalore.com, SCI will file a registration statement on Form S-8 covering
the issue of up to two million shares to be used as compensation pursuant to

exercise of options, approved by Hitsgalore.com, for consultants and professionals rendering services to SCI and Hitsgalore.com.

Section 2.06.  Transaction costs.  Each party shall pay all costs and expenses which  it incurs in connection with this Agreement.  Bruce Baker shall receive 2,000,000 shares of SCI following the Merger as compensation for his services in arranging the Merger.

ARTICLE III

CLOSING OF THE TRANSACTION

Section 3.01.  Location, date and time of the Closing.  The Closing of the Merger shall take place as soon as practicable following a hearing on SCI's involuntary bankruptcy case now scheduled for March 12, 1999, at such place designated by Hitsgalore.com, or by exchange of signature pages by telephone facsimile between the offices of the parties (which facsimile signature pages shall be promptly replaced by manually executed original signature pages) subject to the satisfaction of the conditions to Closing set forth in Section 3 02.

Section 3.02.  Hitsgalore.com's obligations at Closing.  At the Closing, Hitsgalore.com will deliver to SCI:

(a)  Articles of Merger for both Florida and Nevada executed by Hitsgalore.com;

(b)  Officers' Certificates and Secretary's Certificates of Hitsgalore.com, in the respective forms of Exhibit "A" and Exhibit "B".

(c)  An acknowledgment and agreement by Hitsgalore.com's stockholders with respect to those matters set forth in Article VI.

Section 3 03.  SCI's Obligations at Closing.  At the Closing, SCI will deliver to Hitsgalore.com:

(a) Articles of Merger for both Florida and Nevada executed by SCI;

(b)  Certificates for SCI's common stock issued in conversion of Hitsgalore.com common stock, in such names and such denominations as advised by Hitsgalore.com not less than two Business Days prior to the Closing of the Merger.

(c)  Officers' Certificates and Secretary's Certificates of SCI, in the respective forms of Exhibit "A" and Exhibit "B".

(d)  SCI's corporate record book, corporate seal, stock ledger and other pertinent corporate records.

Section 3.04.  Closing memorandum and receipts.  As evidence that all parties deemed the Closing to have been completed and the transaction contemplated by this Agreement to have been consummated, the parties jointly will execute and deliver a memorandum acknowledging such completion and consummation.  The party receiving any consideration or stock under this Agreement will execute and deliver a receipt therefore to the party giving the consideration or stock.

Section 3.05.  Waiver of conditions.  Notwithstanding Section 11.03, any condition to the Closing to the benefit of any party which is not satisfied prior to or at the Closing will be deemed to be waived by that party or satisfied by virtue of that party executing the Closing memorandum.

Section 3.06.  Further Assurances.  At any time and from time to time after the Closing of the Merger, at the reasonable request of any party and without further consideration, any other part(ies) shall execute and deliver such other instruments and documents as such party may deem reasonably desirable or necessary to complete the transactions contemplated by this Agreement

Section 3.07.  Conditions Precedent to SCI's Obligations.  All obligations of SCI hereunder are subject, at the option of SCI, to the fulfillment of each of the following conditions at or prior to the Closing, and Hitsgalore.com shall exert its best efforts to cause each such condition to be so fulfilled

(a)  All representations and warranties of Hitsgalore.com contained herein or in any document delivered pursuant hereto shall be true and correct in all material respects when made and shall be deemed to have been made again at and as of the date of the Closing of the Merger, and shall then be true and correct in all material respects except for changes in the ordinary course of

business after the date hereof in conformity with the covenants and agreements contained herein.

(b) All covenants, agreements and obligations required by the terms of this Agreement to be performed by Hitsgalore.com at or before the Closing shall have been duly and properly performed in all material respects.

(c) Since the date of this Agreement there shall not have occurred any material adverse change in the condition or prospects (financial or otherwise), business, properties or assets of Hitsgalore.com.

(d) There shall be delivered to SCI a certificate executed by Hitsgalore.com's President and Secretary dated the date of the Closing, certifying that the conditions set forth in paragraphs (a), (b) and (c) of this Section 3.07 have been fulfilled.

(e) All documents required to be delivered to SCI at or prior to the Closing shall have been so delivered.

(f) Hitsgalore.com shall have obtained written consents to the Merger where the consent of any other party may, in the opinion of the SCI's counsel, be required for such assignment or transfer.

(g) None of the assets or business of Hitsgalore.com shall have suffered or incurred a material damage, destruction or loss not fully covered by insurance and which has a materially adverse affect on their respective business and operations.

(h) SCI shall have received a certificate of good standing for Hitsgalore.com issued by the secretary of state of its state of incorporation and of each state in which it is qualified to do business as a foreign corporation

(i) SCI shall have received the acknowledgments and agreements from Hitsgalore.com's stockholders specified in Article VI.

Section 3.08.    Conditions Precedent to Hitsgalore.com's Obligations. All obligations of Hitsgalore.com at the Closing are subject, at the option of Hitsgalore.com in its sole discretion, to the fulfillment, as determined by Hitsgalore.com in its sole discretion, of each of the following conditions at or prior to the Closing, and SCI shall cause each such condition to be so fulfilled.

(a) All representations and warranties of SCI contained herein or in any document delivered pursuant hereto shall be true and correct in all material respects when made and as of the Closing.

(b) All obligations required by the terms of this Agreement to be performed by SCI at or before the Closing shall have been duly and properly performed in all material respects.

(c) All requirements to the reorganization of SCI pursuant to Section 2.01 shall have been completed to Hitsgalore.com's satisfaction, including but not limited to the assumption and indemnification by IHSI.

:d) The retiring management of SCI and management of IHSI shall have obtained a voluntary, enforceable agreement from each holder of more than 160,000 shares of SCI's common stock, and such other shareholders following the Closing as requested by Hitsgalore.com, to hold such shares off the public market until such time as the market price for SCI's common stock has reached an average minimum of $5.00 per share for not less than five trading days within a period of twenty trading days (consecutive or non consecutive) and thereafter to offer for sale in the public market each week not more than the greater of 20,000 shares or one percent of the aggregate trading volume for the prior week, and to make such offers in such a prudent manner that the market price is not adversely affected.

:e)    Holders of SCI common stock purchase options, warrants and other rights to purchase its common stock shall have exercised before or concurrently with the Closing enough such options, warrants and other rights sufficient to infuse at least one million dollars more than the amount needed by SCI to pay each and every debt, liability and obligation accruing to or owed by SCI.

:f)    The involuntary bankruptcy proceeding involving SCI shall have been resolved to the satisfaction of Hitsgalore.com in its sole discretion.

(g) There shall be delivered to Hitsgalore.com a certificate executed by the President and Secretary of SCI, dated the date of the Closing, certifying that the conditions set forth in paragraphs (a) through (f) of this Section 3.08 have been fulfilled.

ARTICLE IV

REPRESENTATIONS AND WARRANTIES OF THE PARTIES

Section 4.01.  Hitsgalore.com's representations and warranties.
Hitsgalore.com will represent and warrant to SCI at the Closing:

(a)  Hitsgalore.com is a duly incorporated and existing corporation in good standing under the laws of its state of incorporation, has full corporate power to execute and deliver this Agreement, is qualified and in good standing as a foreign corporation in every jurisdiction where the conduct of its business or the nature of its properties require it to be qualified and has delivered to SCI true copies of its articles of incorporation, bylaws and the records of proceeding of its board of directors and stockholders for the past five years or since inception, whichever is less.

(b)  Hitsgalore.com has the power to conduct business its business as it is now being conducted and to own and lease its properties shown on its most recent balance sheet and used in the conduct of its business.

(c)  This Agreement has been duly and validly authorized, executed and delivered by Hitsgalore.com and constitutes the legal, valid and binding obligation of Hitsgalore.com enforceable against it in accordance with its terms subject, as to enforceability, to bankruptcy, insolvency, reorganization and other laws of, relating to or affecting shareholders and creditors rights generally and to general equitable principles.

(d)  The execution of this Agreement and consummation of the transaction contemplated hereby does not conflict with and will not result in any adverse consequences to or breach of any agreement, mortgage, instrument, judgment, decree, law or governmental regulation, permit or authorization by Hitsgalore.com or in the loss, forfeiture or waiver of any rights or franchise owned by Hitsgalore.com, from which Hitsgalore.com benefits or which is desirable in the conduct of Hitsgalore.com's business.

(e)  Hitsgalore.com's authorized capital is as set forth in its most recent balance sheet and Hitsgalore.com's outstanding shares have been duly and validly authorized, are validly issued and fully paid and nonassessable, all of which are legally and beneficially owned by the holders set forth on Hitsgalore.com's stock records.

(f)  Except for such actions as may have been taken, no further action by or before any governmental body or authority of the United States of America or any state or subdivision  thereof or any self-regulatory body to which Hitsgalore.com is subject is required in connection with the execution and delivery of this Agreement by Hitsgalore.com and the consummation of the transactions contemplated hereby.

(g)  The information Hitsgalore.com has delivered to SCI relating to Hitsgalore.com, its business, its operations and its prospects (financial and otherwise) was on the date reflected in each such item of information accurate in all material respects and such information at the date hereof taken as a whole provides full and fair disclosure of all material information relating to Hitsgalore.com, its business, its operations, its financial condition and its prospects (financial and otherwise) and does not contain any untrue statement of material fact (which is not corrected by subsequent information) or omit to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading;

(h)  Hitsgalore.com has conducted its business in the ordinary course for the last three years or since inception, whichever is less.

(i)  Neither Hitsgalore.com nor any employee, to Hitsgalore.com's knowledge, has within the past five years given or agreed to give any gift or similar benefit valued at more than $20 annually to any customer, supplier, governmental employee or other person who is or may be or have been in a position to help or hinder Hitsgalore.com's business which might subject any of Hitsgalore.com to damage or penalty in civil, criminal or governmental litigation or proceedings.

(j)  Hitsgalore.com's outstanding shares are the only equity securities of Hitsgalore.com issued and outstanding, there being no other equity securities of Hitsgalore com issued and outstanding, no authorizations in effect or, upon a specified event, with the lapse of time or otherwise, to take effect for the issue of additional shares of  Hitsgalore.com's equity securities, no obligations outstanding convertible into equity securities of Hitsgalore.com, no options, warrants, rights similar instruments outstanding pursuant to which the holder has a right to demand and receive the issuance of Hitsgalore.com's equity securities and no stock appreciation rights or phantom stock of Hitsgalore.com held by any person or to which any person has a claim.

(k)  Hitsgalore.com's financial statements at and for the periods ended
December 31, 1998 delivered SCI and been audited by certified public
accountants in accordance with generally accepted auditing standards with a
report thereon issued in accordance with generally accepted accounting
principles consistently applied and maintained throughout the periods
indicated, fairly present the financial condition of Hitsgalore.com at the
dates and the results of operations for the periods indicated and except as
disclosed in the notes thereto Hitsgalore.com does not have any contingent,
undisclosed or hidden liabilities.  Hitsgalore.com's financial statements at
and for the period subsequent to Hitsgalore.com's audited financial
statements, if any, fairly present the financial condition of Hitsgalore.com
at the date and the results of operations for the period indicated, contain
all normally recurring adjustments and do not omit to disclose any contingent,
undisclosed or hidden liabilities.

(l)  Hitsgalore.com has good, marketable and insurable title to all of
the properties and assets which it owns or uses in its business or purports to
own, including, without limitation, those reflected in its books and records
and in the balance sheet, both tangible and intangible, trademarks, trade
names, copyrights and other intellectual properties (excluding inventory sold
after the most recent balance sheet date in the ordinary course of business),
excepting only those properties and assets subject to operating leases
disclosed in Schedule ___.  None of the properties and assets are subject to
any mortgage, pledge, lien, charge, security interest, encumbrance,
restriction, lease, license, easement, liability or adverse claim of any
nature whatsoever, direct or indirect, whether accrued, absolute, contingent
or otherwise, except (i) as expressly set forth in the notes to
Hitsgalore.com's financial statements as securing specific liabilities or
subject to specific capital leases or (ii) those imperfections of title and
encumbrances, if any, which (A) are not substantial in character, amount or
extent and do not materially detract from the value of the properties or
assets subject thereto, (B) do not interfere with either the present or
continued use of such property or assets or the conduct of Hitsgalore.com's
normal business operations and (C) have arisen only in the ordinary course of
business  All of the properties and assets owned, leased or used by
Hitsgalore.com are in good operating condition and repair, are suitable for
the purposes used, are adequate and sufficient for all current operations of
Hitsgalore.com and are directly related to Hitsgalore.com's business.

(m)  All of the contracts, agreements, leases, licenses and commitments
of Hitsgalore.com (other than those which have been fully performed), copies
of all of which have been delivered to SCI, are valid and binding, enforceable
in accordance with their respective terms, in full force and effect and there
is not thereunder any existing default or event, which after the giving of
notice or lapse of time or both, would constitute a default or result in a
right to accelerate or loss of rights and none of such contracts, agreements,
leases, licenses and commitments is, either when considered singly or in the
aggregate with others, unduly burdensome, onerous or materially adverse to
Hitsgalore.com's business, properties, assets, earnings or prospects or either
before or after the Closing, to result in any material loss or liability.

(n)  Except as set forth in Schedule ___, there is no claim, legal
action, suit, arbitration, governmental investigation, or other legal or
administrative proceeding, nor any order, decree or judgment in progress,
pending or in effect or to Hitsgalore.com's knowledge threatened, against or
relating to Hitsgalore.com, its directors, officers or employees it
properties, assets or business or the transaction contemplated by this
Agreement and Hitsgalore.com does not know or have any reason to be aware of
any basis for the same, including any basis for a claim of sexual harassment
or racial or age discrimination.

(o)  All taxes, including without limitation, income, property, special
assessments, sales, use, franchise, intangibles, employees' income withholding
and social security taxes, imposed by the United States or any state,
municipality, subdivision, authority, which are due and payable, and all
interest and penalties thereon, unless disputed in good faith in proper
proceedings and reserved for or set aside, have been paid in full and all tax
returns required to be filed in connection therewith have been accurately
prepared and timely filed and all deposits required by law to be made by
Hitsgalore.com with respect to employees' withholding and social security

taxes have been made. Hitsgalore.com is not and has no reason to believe that it will be the subject of an audit by any taxing authority. There is not now in force any extension of time with respect to the date when tax return was or is due to be filed, or any waiver or agreement by Hitsgalore.com for the extension of time for the assessment of any tax and Hitsgalore.com is not a "consenting corporation" within the meaning of Section 341(f)(1) of the Internal Revenue Code of 1986, as amended; and no shareholder of Hitsgalore.com is entitled to the distribution of previously taxed undistributed S corporation earnings and profits. All workers' compensation, disability and similar items due and payable under any governmental program have been paid.

(p) Hitsgalore.com does not have any employee benefit, pension or profit sharing plans subject to ERISA and no such plans to which Hitsgalore.com is obligated or required to make contributions.

(q) None of Hitsgalore.com's employees are represented by a collective bargaining agent or subject to a collective bargaining agreement and Hitsgalore.com considers its relations with its employees as a whole to be good. Hitsgalore com has disclosed to SCI all employee salary, compensation and benefit agreements and no employee has a written employment agreement.

(r) All offers and sales of securities by Hitsgalore.com during the most recent two years have been made in compliance with the requirements of federal and applicable state securities laws.

Section 4.02. SCI's representations and warranties. SCI represents and warrants to Hitsgalore.com that:

(a) SCI is a duly incorporated and existing corporation in good standing under the laws of its state of incorporation, has full corporate power to execute and deliver this Agreement, is qualified and in good standing as a foreign corporation in every jurisdiction where the conduct of its business or the nature of its properties require it to be qualified and has delivered to SCI true copies of its articles of incorporation, bylaws and the records of proceeding of its board of directors and stockholders for the past five years.

(b) This Agreement has been duly and validly authorized, executed and delivered by SCI and constitutes the legal, valid and binding obligation of SCI enforceable against SCI in accordance with its terms subject, as to enforceability, to bankruptcy, insolvency, reorganization and other laws of, relating to or affecting shareholders and creditors rights generally and to general equitable principles.

(c) The execution of this Agreement and consummation of the transaction contemplated hereby does not conflict with and will not result in any adverse consequences to or breach of any agreement, mortgage, instrument, judgment, decree, law or governmental regulation, permit or authorization by SCI or in the loss, forfeiture or waiver of any rights or franchise owned by SCI, from which SCI benefits or which is desirable in the conduct of SCI's business.

(d) SCI's shares, when issued by SCI and authenticated and delivered by its transfer agent, in conversion of the Hitsgalore.com shares will be duly and validly authorized, are validly issued and fully paid and nonassessable.

(e) Except for such actions as may have been taken, no further action by or before any governmental body or authority of the United States of America or any state thereof is required in connection with the execution and delivery of this Agreement by SCI and the consummation of the transactions contemplated hereby.

(f) The information SCI has delivered to Hitsgalore.com was on the date reflected in each such item of information accurate in all material respects and such information at the date hereof as a whole did not contain any untrue statement of material fact or omit to state any material fact necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

(g) SCI is obligated to file reports pursuant to Section 12(g) of the Securities Exchange Act of 1934, as amended, and is current in its reporting obligations thereunder.

(h) At the Closing of the Merger, SCI will not have any business, properties or assets, other than the shares of IHSI held in escrow or trust, and will not have any debts, liabilities or obligations which have not been paid or assumed by IHSI with the full release of SCI.

Section 4.03. Nature and Survival of

Representation and Warranties. All statements of fact contained in this Agreement, any certificate delivered pursuant to this Agreement, or any letter, document or other instrument delivered by or on behalf of Hitsgalore.com or SCI and their respective officers, pursuant to the terms of this Agreement shall be deemed representations and warranties made by Hitsgalore.com and SCI, respectively, to each other under this Agreement. For purposes of this Section 4.03 and Section 10.01 only, any party or other person seeking to enforce, or claiming the benefit of, any representation and warranty under this Agreement is called a Claimant, and any party or other person against whom a right is claimed is called a Defendant. All representations and warranties of the parties shall survive the Closing and all inspections, examinations or audits on behalf of the parties; provided, however, that all representations and warranties shall terminate and expire, and be without further force and effect whatever from and after the one year from the date hereof, and neither SCI nor Hitsgalore.com shall have any liability whatsoever on account of any inaccurate representation or warranty or for any breach of warranty, unless a Claimant shall, on or prior to the expiration of such one year period, serve written notice on a Defendant, with a copy to the Defendant's counsel, setting forth in reasonable detail the breach and any direct, incidental or consequential damages (including amounts) the Claimant may have suffered as a result of such breach.

ARTICLE V

COVENANTS OF THE PARTIES

  Section 5.01. Conduct of Business Prior to Closing.
  (a)  From the date hereof to the Closing, Hitsgalore.com will conduct its business and affairs only in the ordinary course and consistent with its prior practice and shall maintain, keep and preserve its assets and properties in good condition and repair and maintain insurance thereon in accordance with present practices. it will use its best efforts (i) to preserve its business and organization intact, (ii) to keep available to SCI the services of Hitsgalore.com's present employees, agents and independent contractors, (iii) to preserve for the benefit of SCI the goodwill of suppliers, customers, distributors, landlords and others having business relations with it, and (iv) to cooperate and use reasonable efforts to assist SCI in obtaining the consent of any landlord or other party to any lease or contract with Hitsgalore.com where the consent of such landlord or other party may be required by reason of the transactions contemplated hereby.
  (b)  From the date hereof to the Closing, SCI shall not, other than as disclosed to Hitsgalore.com and approved by it in its sole discretion, (i) dispose of any material assets, (ii) engage in any extraordinary transactions, including but not limited to, directly or indirectly, soliciting, entertaining, encouraging inquiries or proposals or entering into negotiation or agreement with any third party for sale of assets by SCI, sale of equity securities or merger, consolidation or combination with any company, (iii) grant any salary or compensation increase to any employee, or (iv) make any commitment for capital expenditures.
          Section 5.02. Notice of changes in information. Each party shall give the other party prompt written notice of any change in any of the information contained in their respective representations and warranties made in Article IV, or elsewhere in this Agreement, or the exhibits and schedules referred to herein or any written statements made or given in connection herewith which occurs prior to the Closing.
          Section 5.03. Notice of extraordinary changes. SCI shall advise Hitsgalore com with respect to any of the following outside of ordinary course of business or which are materially adverse:  (i) the entering into and cancellation or breach of contracts, agreements, commitments or other understandings or arrangements to which SCI is a party, including, without limitation, purchase orders for any item of inventory and commitments for capital expenditures or improvements, orderly and gradual discontinuance or particular items or (ii) any changes in purchasing, pricing or selling policy (including, without limitation, selling merchandise at discounts); provided, however, that not withstanding anything contained in this subsection SCI will not take or fail to take any action that, in Hitsgalore.com's judgment, is likely to give rise to a substantial penalty or a claim for damages by any third party against SCI, or is likely to result in losses to either corporation, or is otherwise likely to prejudice in any material respect or

unduly interfere with the conduct of its business and operations in the ordinary course consistent with prior practice, or is likely to result in a breach by SCI of any of its representations, warranties or covenants contained in this Agreement (unless any such breach is first waived in writing by Hitsgalore.com).

Section 5.04.  Access to Information and Documents.  Upon reasonable notice and during regular business hours, each party will give the other party, its attorneys, accountants and other representatives full access to its personnel (subject to reasonable approval as to the time thereof) and all properties, documents, contracts, books and records and will furnish copies of such documents (certified by officers, if so requested) and with such information with respect to its business, operations, affairs and prospects (financial and otherwise) as it may from time to time request, and the party to whom the information is provided will not improperly disclose the same prior to the Closing.  Any such furnishing of such information or any investigation shall not affect that party's right to rely on the other party's representations and warranties made in this Agreement or in connection herewith or pursuant hereto.

Section 5.05.  Cooperation by the parties.  Each party hereto shall cooperate and shall take such further action as may be reasonably requested by any other party in order to carry out the provisions and purposes of this Agreement

ARTICLE VI

SECURITIES LAW MATTERS AND STATUS OF SHARES

Section 6.01.  Unregistered Shares.  The Hitsgalore.com stockholders will acknowledge that SCI's common stock issued in conversion of the Hitsgalore.com shares in the Merger is not being registered under the federal Securities Act of 1933, as amended, ("1933 Act") and the securities laws of Hitsgalore.com's stockholders' states of residence, and that it is not transferable, except as permitted under various exemptions contained in the 1933 Act and applicable state securities law.  The provisions contained in the following sections are intended to ensure compliance with the 1933 Act and applicable state securities law.

Section 6.02.  No Transfers in Violation of 1933 Act.  The Hitsgalore.com stockholders will agree not to offer, sell, assign, pledge, hypothecate, transfer or otherwise dispose of the SCI shares, except after full compliance with all of the applicable provisions of the 1933 Act and applicable state securities law.

Section 6.03.  Investment intent.  Each of Hitsgalore.com stockholders will represent and warrant to and covenant with SCI that he is acquiring SCI shares for his own account for investment, and not with a view to resale or other distribution; that he currently has no intention of selling, assigning, transferring, pledging, hypothecating or otherwise disposing of all or any part thereof at any particular time, for any particular price, or on the happening of any particular event or circumstance; and he acknowledges that SCI is relying on the truth and accuracy of the covenants, warranties and representations of Hitsgalore.com in issuing SCI's shares without first registering it under the 1933 Act.

Section 6.04.  Conditions to sale and investment legend on certificates  Each of Hitsgalore.com's stockholders will agree not to sell, assign, transfer, pledge, hypothecate or otherwise dispose of any of the SCI shares for two years following the Closing, unless and until he (i) has delivered to SCI a written legal opinion in form and substance satisfactory to counsel for SCI to the effect that the disposition is permissible under the terms of the 1933 Act; (ii) has complied with the registration and prospectus delivery requirements of the 1933 Act; or (iii) has presented SCI satisfactory evidence that the transfer will comply with Rule 144 under the 1933 Act.  The Hitsgalore.com stockholders will further agrees that the certificates evidencing the SCI's shares shall contain the following legend:

THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND IS A "RESTRICTED SECURITY" AS DEFINED UNDER SAID ACT. ACCORDINGLY, NEITHER THIS SECURITY NOR ANY INTEREST THEREIN MAY BE SOLD, OFFERED FOR SALE, ASSIGNED, TRANSFERRED, PLEDGED OR HYPOTHECATED, EXCEPT BY BONA FIDE GIFT OR INHERITANCE, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT AS TO THIS SECURITY UNDER SAID ACT OR AN OPINION OF COUNSEL SATISFACTORY TO HITS THAT

SUCH REGISTRATION IS NOT REQUIRED.
Hitsgalore com's stockholders will acknowledge SCI will also place a "stop transfer" order against any transfer of SCI's shares until one of the conditions set forth in this section has been met.

Section 6.05.  Indemnification by Hitsgalore.com.  If at any time in the future, a Hitsgalore.com stockholder should offer, sell, assign, pledge, hypothecate, transfer or otherwise dispose of any of SCI's shares without registration under the 1933 Act, unless an exemption from registration is available, such stockholder agrees to indemnify and hold harmless SCI against and from any and all claims, liabilities, penalties, costs and expenses which may be asserted against or suffered by SCI as a result of the disposition

Section 6.06.  State securities law.  The Closing is subject to any and all requirements of the laws of Hitsgalore.com's stockholders respective states of residence applying to the offer and sale of securities therein  In no event shall any party be liable to anyone for failure to sell or issue its securities pursuant to this Agreement, unless and until all applicable requirements of the law of the applicable state of the recipient's residence relating to the offer and sale have been satisfied.

ARTICLE VII
FEDERAL INCOME TAX MATTERS AND ELECTIONS
Section 7.01.  Each party shall be responsible for obtaining it own tax advice with respect to the transactions contemplated by this Agreement.

ARTICLE VIII
TERMINATION PRIOR TO CLOSING
Section 8.01.  Termination For Default.

(a)  SCI may, by notice to Hitsgalore.com given in the manner provided below on or at any time prior to the Closing Date, terminate this Agreement if default shall be made by Hitsgalore.com in the observance or in the due and timely performance of any of the covenants and agreements contained, made by or imposed upon it, in this Agreement, if the default has not been fully cured within fifteen days after receipt of the notice specifying the default.

(b)  Hitsgalore.com may, by notice to SCI given in the manner provided below on or at any time prior to the Closing Date, terminate this Agreement if default shall be made by SCI in the observance or in the due and timely performance of any of its covenants and agreements contained in this Agreement, if the default has not been fully cured within fifteen days after receipt of the notice specifying the default.

(c)  Notwithstanding Section 2.06, the party giving notice of the other party's default, if the default is not cured as provided in subsection (a) or (b), above, will be entitled to recover its costs incurred in connection with this Agreement.

Section 8.02.  Termination.  If the Closing does not occur by March 13, 1999 Hitsgalore.com may at any time terminate this Agreement by giving written notice to SCI.

Section 8.03.  Termination.  SCI may, at its option, terminate this Agreement prior to the Closing if the business or assets of Hitsgalore.com have suffered any material damage, destruction or loss (whether or not covered by insurance).

ARTICLE IX
NOTICES
Section 9.01.  Procedure for giving notices.  Any and all notices or other communications required or permitted to be given under any of the provisions of this Agreement shall be in writing and shall be deemed to have been duly given when personally delivered (excluding telephone facsimile and including receipted express courier and overnight delivery service) or mailed by first class certified U.S. mail, return receipt requested showing name of recipient, addressed to the proper party.

Section 9.02.  Addresses for notices. For purposes of sending notices under this Agreement, the addresses of the parties are as follows:
As to Hitsgalore com:  Steve Bradford, Chief Executive Officer
        Suite J, 10134 Sixth Street
        Rancho Cucamonga, California 91730
  Copy To      Name/title_____
        Address_____
        _____

As to SCI:     Edwin B. Salmon, Jr., Chairman
       Suite 107, 4707 140th Avenue North
       Clearwater, Florida 33762
   Copy to    Jackson L. Morris, Esq.
       3116 West North A Street
       Tampa, Florida  33609

Section 9.03.  Change of address.  A party may change its address for
notices by sending a notice of such change to all other parties by the means
provided in Section 9.01.

ARTICLE X

LEGAL AND OTHER COSTS

Section 10 01.  Party entitled to recover.  In the event that any party
(the "Defaulting Party") defaults in his or its obligation under this
Agreement and, as a result thereof, the other party (the "Non-Defaulting
Party") seeks to legally enforce his or its rights hereunder against the
Defaulting Party (whether in an action at law, in equity or in arbitration),
then, in addition to all damages and other remedies to which the Non-
Defaulting Party is entitled by reason of such default, the Defaulting Party
shall promptly pay to the Non-Defaulting Party an amount equal to all costs
and expenses (including reasonable attorneys' fees and expert witness fees)
paid or incurred by the Non-Defaulting Party in connection with such
enforcement.

Section 10 02.  Interest.  In the event the Non-Defaulting Party is
entitled to receive an amount of money by reason of the Defaulting Party's
default hereunder, then, in addition to such amount of money, the Defaulting
Party shall promptly pay to the Non-Defaulting Party a sum equal to interest
on such amount of money accruing at the rate of 1.5% per month during the
period between the date such payment should have been made hereunder and the
date of the actual payments thereof.

ARTICLE XI

MISCELLANEOUS

Section 11 01.  Effective date.  The effective date of this Agreement
shall be February ____, 1999, subject to any conditions set forth herein.

Section 11 02.  Entire agreement.  This writing constitutes the entire
agreement of the parties with respect to the subject matter hereof,
superseding all prior agreements, understandings, representations and
warranties.

Section 11 03.  Waivers  No waiver of any provision, requirement,
obligation, condition, breach or default hereunder, or consent to any
departure from the provisions hereof, shall be considered valid unless in
writing and signed by the party giving such waiver, and no such waiver shall
be deemed a waiver of any subsequent breach or default of the same or similar
nature.

Section 11 04.  Amendments.  This Agreement may not be modified, amended
or terminated except by a written agreement specifically referring to this
Agreement signed by all of the parties hereto and amendment, modification or
alteration of, addition to or termination of this Agreement or any provision
of this Agreement shall not be effective unless it is made in writing and
signed by the parties.

Section 11 05.  Construction.  This Agreement has been negotiated by the
parties, section by section, and no provision hereof shall be construed more
strictly against one party than against the another party by reason of such
party having drafted such provision.  The order in which the provisions of
this Agreement appear are solely for convenience of organization; and later
appearing provisions shall not be construed to control earlier appearing
provisions.

Section 11 06.  Invalidity.  It is the intent of the parties that each
provision of this Agreement shall be interpreted in such a manner as to be
effective and valid under applicable law.  If any provision hereof shall be
prohibited, invalid, illegal or unenforceable, in any respect, under
applicable law, such provision shall be ineffective to the extent of such
prohibition, invalidity or non enforceability only, without invalidating the
remainder of such provision or the remaining provisions of this Agreement;
and, there shall be substituted in place of such prohibited, invalid, illegal
or unenforceable provision a provision which nearly as practicable carries out

the intent of the parties with respect thereto and which is not prohibited and is valid, legal and enforceable.

Section 11 07.  Multiple counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be an original and, taken together, shall be deemed one and the same instrument.

Section 11 08.  Assignment, parties and binding effect.  This Agreement, and the duties and obligations of any party shall not be assigned without the prior written consent of the other party(ies).  This Agreement shall benefit solely the named parties and no other person shall claim, directly or indirectly, benefit hereunder, express or implied, as a third-party beneficiary, or otherwise.  Wherever in this Agreement a party is named or referred to, the successors (including heirs and personal representative of individual parties) and permitted assigns of such party shall be deemed to be included, and all agreements, promises, covenants and stipulations in this Agreement shall be binding upon and inure to the benefit of their respective successors and permitted assigns.

Section 11 09.  Survival of representations and warranties.  The representations and warranties made herein shall survive the execution and delivery of this Agreement and full performance hereunder of the obligations of the representing and warranting party.

Section 11 10.  Arbitration.  Unless a court of competent jurisdiction shall find that a particular dispute or controversy cannot, as a matter of law, be the subject of arbitration, any dispute or controversy arising hereunder  other than suit for injunctive relief which can be granted only by a court of competent jurisdiction, shall be settled by binding arbitration in Tampa, Florida by a panel of three arbitrators in accordance with the rules of the American Arbitration Association; provided, that the rules of discovery of the U.S. District Court with jurisdiction of the situs of the arbitration shall apply  Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.  The parties may pursue all other remedies with respect to any claim that is not subject to arbitration.

Section 11 11.  Jurisdiction and venue.  Any action or proceeding for enforcement of this Agreement and the instruments and documents executed and delivered in connection herewith which is determined by a court of competent jurisdiction not, as a matter of law, to be subject to  arbitration as provided in Section 11.10 or which seeks injunctive relief shall be brought and enforced in the courts of the State of Florida in and for Pinellas County and in the United States District Court for the Middle District of Florida, Tampa Division, and the parties irrevocably submit to the jurisdiction of each such court in respect of any such action or proceeding.

Section 11 12.  Applicable law.  This Agreement and all amendments thereof shall be governed by and construed in accordance with the law of the State of Florida applicable to contracts made and to be performed therein (not including the choice of law rules thereof).

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be signed by their respective officers thereunto duly authorized and their respective corporate seals to be hereunto affixed, the day and year first above written

[Corporate Seal]     Systems Communications, Inc.
Attest:        By:

-----------------------------
                Edwin B. Salmon, Jr.,
Chairman

-----------------------------
Secretary
[Corporate Seal]      Hitsgalore.com
Attest:        By:

-----------------------------
                Steve Bradford, President
-----------------------------
Secretary


EXHIBIT "A"
OFFICERS' CERTIFICATE
Pursuant to Section 3.0__ of the Stock Purchase and Sale Agreement identified within

The undersigned, _____, President, and _____, Treasurer, of a _____, a _____ corporation (the "Corporation"), hereby each certifies that he is familiar with the Merger Agreement, dated February ___, 1999 (the "Agreement"), between the Corporation and _____ and, to the best of his knowledge, based on reasonable investigation:

(a) All representations and warranties of the _____ (as defined in the Agreement) contained in the Agreement, and in all Exhibits and Schedules attached thereto containing information delivered by _____, were true and correct in all material respects when made and when deemed to have been made and are true and correct at the date hereof, except for changes in the ordinary course of business between the date of the Agreement, in conformity with the covenants and agreements contained in the Agreement.

(b) All covenants, agreements and obligations required by the terms of the Agreement to be performed by _____ at or before the Closing have been duly and properly performed in all material respects.

(c) Since the date of the Agreement there have not occurred any material adverse change in the condition or prospects (financial or otherwise), business, properties or assets of the _____.

IN WITNESS WHEREOF, each of the undersigned has executed this certificate this _____, 1999.

_____
_____, President


_____
_____, Treasurer

EXHIBIT "B"
SECRETARY'S CERTIFICATE
Pursuant to Section 3.0__ of the Merger Agreement identified within.

I, _____, the duly elected, qualified and acting Secretary of _____, a corporation duly organized, existing and in good standing under the laws of _____, (the "Corporation") do hereby certify that:

(i) The following is a true and complete copy of Resolution of the Board of Directors of the Corporation taken and adopted on February ___, 1999, approving the Merger Agreement dated February ___, 1999, by and among the Corporation and _____, and that said Resolution has not been rescinded, revoked or modified and is in full force and effect at the date hereof:

(ii) The persons whose names, titles and signatures appear below are each the duly elected, qualified and acting officers of the Corporation, hold on the date hereof the offices set forth opposite their respective names and the signatures appearing opposite said names are the genuine signatures of said persons:

| Name | Title | Signature |
|---|---|---|
| _____ | President | _____ |
| _____ | Secretary | _____ |
| _____ | Treasurer | _____ |

(iii) I am authorized by the Corporation to make the within certifications.

IN WITNESS WHEREOF, I have executed this Certificate on _____,

1999.

(CORPORATE SEAL)

_____
_____, Secretary

I. ____ _____, President of _____, a _____
corporation, hereby certify that _____ is the duly elected, qualified
and acting Secretary of _____ and that the signature appearing above
is his genuine signature.

IN WITNESS WHEREOF, I have executed this Certificate on
_____, 1999.

_____
_____, President

# EXHIBIT

# B



Economy: U.S. April wholesale inventories rose 0.2%, sales unchanged

**NEWS**
Top Financial News
Top World News
Stock Market Update
Technology
U.S. Economy
Columns

**STOCKS**
Tech Stocks
Stocks on the Move
Chart Builder
World Indices
Movers by Exchange
Stocks in the Dow
S&P 500 Snapshot
Industry Movers
Most Active Options
IPO Center
Regional Indices

**RATES & BONDS**
Key Rates
U.S. Treasuries
International Bonds
Muni Bond Yields

**CURRENCIES**
Currency Rates
Cross Currency Rates
Currency Calculator
EMU Update

**COMMODITIES**
Most Active Futures
Commodity Movers
Energy

<u>Free access to online research from Salomon Smith Barney. Click here.</u>

## Hitsgalore.com Omitted Founder's Link to Fraud in SEC Filing

Hitsgalore.com Omitted Founder's Link to Fraud in SEC Filing

Rancho Cucamonga, California, May 11 (Bloomberg) -- Hitsgalore.com Inc., an Internet company whose market value soared from $53 million to $1 billion in three months, hasn't disclosed its founder was accused of cheating customers last year at a previous job.

The founder, Dorian Reed, and two co-defendants were ordered by a federal judge in Baltimore last month to pay $613,110 to 100 customers of Internet Business Broadcasting, an Internet advertising company that failed last year.

The Federal Trade Commission accused Reed and IBB of sending junk e-mails, called ``spam,'' touting a 100 percent annual return on investments of $5,000 to $7,500 in its Internet advertising banners. It described Reed as IBB's ``principal telemarketer.'' He and the co-defendants were ordered not to make false and deceptive statements in the future. ``We alleged they were lying to investors about how much money they could make,'' said FTC attorney Mona Sedky Spivack. The judgment against the three was entered after the defendants failed to appear for trial.

Hitsgalore.com was founded in July, four months after the FTC sued Reed. It's based a few blocks from IBB's former headquarters in Rancho Cucamonga, California, 60 miles east of Los Angeles.

Reed became chief technology officer of Hitsgalore.com and Steve Bradford, a business associate not involved with IBB, became president. Both are directors, too. On Feb. 11, it went public by merging with Systems Communications Inc., a publicly traded shell company.

In the merger agreement, Hitsgalore.com said there were no suits or governmental investigations against any of its officers, directors or employees. It didn't disclose the FTC's case against Reed in filings with the Securities and Exchange Commission.

Selling Concept

Reed refused to be interviewed when asked for comment. Bradford said Reed developed the concept for Hitsgalore.com, which is similar to that of IBB.

Hitsgalore.com claims on its web site that for $99, customers can ``make money sponsoring free lifetime banner placements.'' ``We do most all the selling'' and there's ``no limit on your income from doing nothing more than being a sponsor,'' Hitsgalore.com says. ``Why not become a proactive sponsor and make a killing.''

The company said in unaudited financial statements that 1998 revenue was less than $10,000. In the first quarter of 1999, it had revenue of $463,880 and earnings of $289,494.87.



EXHIBIT

B

Yesterday, Hitsgalore.com stock gained 4 5/8 to 20 1/8 on trading of 945,600 shares. At the time of the merger, the shares were worth $1.05 each, giving the company a market worth of $53 million. Its 49.7 million shares are now worth $1 billion.

Hitsgalore.com said yesterday an organization called the Life Foundation Trust is boosting its stake in the company with a $100 million investment at more than a 50 percent premium to its market price.

Shares Soar

Hitsgalore.com shares soared to 20 1/8 after it said the trust agreed in principle to buy 4 million restricted shares at $25 apiece. It said it previously bought 2 million shares at $5. The shares fell 5/8 to 19 1/2 in early trading today.

Bradford, Hitsgalore.com's president, said the trust has assets of more than $1 billion and is based in Arizona. He refused to say where. ``They don't want to be inundated with lots of calls from little companies looking for funding,'' he said.

Bradford said he didn't know if the trust is a tax-exempt organization. He said it engages in ``educational, medical and biblical projects'' and that it was attracted to Hitsgalore.com because of its Internet search engine that screens out pornographic sites.

Bradford said he declined Reed's invitation to join him at IBB last year. ``I was aware of IBB,'' he said. ``The FTC has raised some questions about some practices they had.'' Bradford said it was Reed who eventually shut IBB.

Bradford said he owns 4.25 million Hitsgaolore.com shares, with Reed owning a larger stake.

NYSE/AMEX delayed 20 min. NASDAQ delayed 15 min.

 ScoTTrade

**Access More Information and Services Above**

©1999 Bloomberg L.P. All rights reserved. <u>Terms of Service</u>, <u>Privacy Policy</u> and <u>Trademarks</u>.

# EXHIBIT

# C



**YAHOO!FINANCE** ⊞ Home - Yahoo! - Help        BUSINESS WIRE
                                                 *for. Today's News on the Net.*



**EXHIBIT**

C

*StockInvestor.com* : *Free Real-Time Quotes*
                      *Free Qualified*
                      *Buy Recommendations*
*Click Here for a Free Subscription* : *World Markets Information*

[ Business | US Market | By Industry | IPO | AP | S&P | International | PRNews | BizWire ]

**Tuesday May 11, 3:12 pm Eastern Time**

**Company Press Release**

**Related Quotes**

HITT     5 5/16    +3/16
delayed 20 mins - disclaimer
[Get Quotes]

# Hitsgalore.com Responds to Bloomberg Article

RANCHO CUCAMONGA, Calif.--(BUSINESS WIRE)--May 11, 1999-- Hitsgalore.com, Inc. (OTC BB:HITT), in response to a Bloomberg article, today stated that it stands by all documents filed on behalf of the company with the SEC.

Steve Bradford, CEO said, ``Based on an initial investigation conducted by management, I do not believe that the company has made any fraudulent filing with the SEC or has violated the representations and warranties in the merger agreement in any way, as implied in the article. However, we have appointed a committee of independent directors to fully investigate this matter."

The Bloomberg article came as a shock to the Company. Mr. Reed has informed the company that, although he was aware that the FTC had initiated action in February, 1998, he thought the matter was resolved and he was unaware that the FTC had taken any further action or sought a judgement as described in the article. Mr. Reed stated: ``More than one year ago I received the complaint from the FTC. I personally responded without the aid of a lawyer and I denied all allegations. I have heard nothing since I responded and I assumed the matter was taken care of last spring."

Jeanette Wilcher, trustee of the Life Foundation Trust stated, ``The Life Foundation Trust is interested in the products and services of Hitsgalore.com. We support completely the company and those products and services. No rumor concerning the personnel is of any interest to us. We expect to finalize our equity investment in Hitsgalore.com as soon as possible with the full approval of the shareholders of the company."

The previous business in question, Internet Business Broadcasting, Inc. was shut down in 1997. The record at the FTC website reflects that the FTC filed a complaint alleging spamming on February 19, 1998, and there was no further action until a Motion for Default Judgement against Reed filed March 30, 1999. Mr. Reed has informed the company that he did not receive a copy of the motion.

Other information contained at the FTC website (http://www.ftc.gov/os/1998/9804/blileyt.htm) indicates that the FTC, in responses submitted to the US House Committee on Commerce, took action against several internet businesses ``regarding fraud in electronic commerce." In addition to Internet Business Broadcasting, Inc., the activities listed by the FTC at its website includes such well-

known internet businesses as America Online, Inc., Prodigy Services Corporation and CompuServe, Inc.

*Contact:*

```
Hitsgalore.com, Inc., Rancho Cucamonga
Danny Gavin, Investor Relations, 800/300-5388
or investor@hitsgalore.com
```

**More Quotes and News:** Hitsgalore.com Inc (OTC BB:HITT - news)

**Related News Categories:** computers, internet

Search News     Help

Copyright © 1999 Business Wire. All rights reserved. All the news releases provided by Business Wire are copyrighted. Any forms of copying other than an individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden, including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form. See our Important Disclaimers and Legal Information. Questions or Comments?

# EXHIBIT

# D

  search [ Choose Medical Topic ▼ ] **drkoop.com**

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

| 🔴 Real Time Quote | 🔵 Chart | ✉ Free E-Mail | 🔴 Raging HITT Links |

**Enter Symbol to get a Quote**

< Previous          Respond          Next >

By: JaniceShell                    Tuesday, 18 May 1999 at 2:23 PM EDT
Reply To: 6666 by 13M20S8          Post # [6731] of 9506

[ Get Quote ]

Nasdaq delayed 15 minutes, 20 min. otherwise.

"Right on the money HRoark. I'm positive the suites will go nowhere, for exactly those reasons.....jmo"

Shorters don't short for no reason, and law firms--who, after all, are in it for the money--don't bring class action suits for no reason.

My guess is that the suits now pending will be predicated on the following:

1. Last week and this week HITT stock got smashed. Many shareholders lost a great deal of money.

2. Why did the stock get smashed? Because Dorian Reed's unsavory past was brought to light.

3. What has this got to do with HITT? Well, he founded the company, worked for the company, was a director, and is still the largest shareholder.

4. The most telling point: knowingly or unknowingly (you can guess what I think) in its Form 15c2-11 the company assured that none of its officers or directors had any pending state or federal legal problems.

Frankly, it seems open and shut to me.

**Your $0.02 Wanted! Why just lurk? Get in the ring. Click Here**

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |
Previous | Next | Post New | Respond | View Replies
Favorite Boardmarks| No boardmarks have been placed

**Message Board Search**          **Board Directory**
[                    ]  [ Search! ]      [ Computer-Related ▼ ]  [ Go! ]
● Symbol  ○ Subject  ○ Member

Home  | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

EXHIBIT
D



**drkoop** CLICK HERE

Choose Medical Topic

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

| Real Time Quote | Chart | Free E-Mail | Raging HITT Links |

**Enter Symbol to get a Quote**

< Previous                    Respond                    Next >

By: **JaniceShell**                    Tuesday, 18 May 1999 at 4:53 PM EDT
Reply To: 6735 by HRoark                    Post # 6783 of 9507    **Get Quote**

Nasdaq delayed 15 minutes, 20 min. otherwise.

"Janice? form 15c2-11, no disclosure was made regarding Dorian? A question, this company had an IPO? when? and was disclosure made then?"

The company didn't do an IPO. They did a reverse merger. However, they did have to file a Form 15c2-11 in order to begin trading as an OTCBB stock using the ticker HITT. They did this in February. As part of the disclosure information required, they volunteered than no officers or directors had any state or federal legal problems.

Not true.

**Your $0.02 Wanted!** Why just lurk? Get in the ring. Click Here

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

Previous | Next | Post New | Respond | View Replies
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                    **Board Directory**

[ Search! ]    Computer-Related    [ Go! ]

⦿ Symbol  ○ Subject  ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

| Real Time Quote | Chart | Free E-Mail | Raging HITT Links |

< Previous                    Respond                    Next ≥

**By: JaniceShell**                Wednesday, 19 May 1999 at 4:40 PM EDT
Reply To: 6986 by SeasideSue              Post # 7067 of 9510

**Enter Symbol to get a Quote**

Get Quote

Nasdaq delayed 15 minutes, 20 min. otherwise.

"That's for us to know and for you to find out later!"

For the record: that's probably one of the ten most idiotic statements made on this board. My own favorite for #1 is the guy who said he understood HITT would be taking controlling interest in Yahoo.

How do you feel about con men, Sue? That's what the FTC thinks Dorian Grey, oops, Reed, is.

**Your $0.02 Wanted!** Why just lurk? Get in the ring. Click Here

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

| Previous | Next | Post New | Respond | View Replies |
**Favorite Boardmarks** No boardmarks have been placed

**Message Board Search**
[        ]  [ Search! ]
● Symbol ○ Subject ○ Member

**Board Directory**
[ Computer-Related ]  [ Go! ]

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

# Y PAY EBAY?

Talk : $5 and Under : HITSGALORE.COM (HITT)

| Previous | Next | Respond | Become a Member of Silicon Investor!

| To: **WVMayor** (1615 ) | : | **Thursday, May 27 1999 6:21PM** ET | **Nex** |
|---|---|---|---|
| From: mary Shel | | Reply # 1631 of 1730 | **Prev** |

**Well, Mayor, you've heard of Carlo Ponzi. This is a classic pyramid scheme. Not all (in my opinion unfortunately) are illegal, but many are.**

**We'll just have to wait and see what happens.**

| Previous | Next | Respond | View 2 replies to this message

Quotes - News - Discussion - $5 and Under

**View SubjectMarks**              **Bookmark this Subject**

## HITSGALORE.COM INC (OTC: HITT)              Time: 10:20AM

| Last Trade<br>$5 \frac{7}{8}$ | Change | Bid<br>$5 \frac{7}{8}$ | Ask<br>$5 \frac{15}{16}$ | Volume<br>$^0 22{,}600_0$ |
|---|---|---|---|---|
| Prev.Close<br>$5 \frac{31}{32}$ | Open<br>$5 \frac{13}{16}$ | Day Range<br>$5 \frac{13}{16}$ - $5 \frac{31}{32}$ | Last Tick<br>$^0-_0$ | Avg.Volume<br>$^0 466{,}200_0$ |

52-week range: $3 \frac{13}{16}$ - $20 \frac{11}{16}$

**Discussion** | People | MetaCrawler        ⦿ Subject Titles Only
                                                ◯ Full-Text
[                    ]  [ Search ]            ◯ This Subject Only

Home | Churns | | Groups | Spotlight | Profiles | Quotes

Send questions and feedback to webmistress@techstocks.com

Terms of Use

# EXHIBIT

# E




**RagingQuotes.com**

| Home | Register | Community | My SI | **Login** | Search | PT Club |

**HITGALORE.COM (HITT)**    Message List

🌐 Real Time Quote     📊 Chart     ✉ Free E-Mail     🌐 Raging HITT Links

**HITT Update**

< Previous                **Respond**              Next >

Last    6 1/8
Chg.

By: mayor                Tuesday, 11 May 1999 at 11:20 AM EDT
Reply To: 2984 by mayor            Post # 2986 of 8104

% Time    15:57
Detailed | Real-Time

Ok, now it may be over. Shoot. Mr Pink on SI has issued a short to $3. This guy is RARELY wrong. Just providing info folks, that's all.

Get Quote
Nasdaq delayed 15 minutes, 20 min. otherwise.

———

To: +Jeffry White (8408 )
From: +Mr. Pink
Tuesday, May 11 1999 11:15AM ET
Reply # of 8411

Your $0.02 Wanted!
Why just lurk?
Get in the ring.
Click Here

To All: 4.00pm Announcement cancelled Blooomberg beat Mr. Pink to story on HITT.
Heading to single digits but no longer T4/f; revised to t3/f after price drop.
Target $3.00

Here are a few links from SNAP search on technology chief and convicted scamster
Dorian Reed

**Dorian Reed Links**

A Snap search yields many interesting links

http://nscp.snap.com/search/directory/results/1,61,nscp-0,00...

Including:

FTC brings fraud charges against mass e-mailer
http://www5.zdnet.com/zdnn/content/zdnn/0305/291985.html

FTC Sues Spammer
http://www.internetsurfer.com/April98/ap9804.htm

FTC Sues Spammer; Alleges Business Opportunity Falsely Promoted In Unsolicited
Commercial E-Mail
http://www.mlmlaw.com/news/netopp/ibb.htm

EXHIBIT

E

Here is the link on the actual FTC Action.

http://www.ftc.gov/os/1998/9803/complain.htm

ga.to/mmf/mmfow/report1.html

Sorry that this was disseminated ahead of the Day of Reckoning as foretold
by Mr. Pin*.
Mr. P!nk did not alert Bloomberg...He is saddened that He could not share
this with His
followers and minions.

There will be more scams in the future; but ones this juicey come up but a
few times a
year.

Mr. Pink

——

**Previous**

| BoardMark | MemberMark | Ignore Poster |
|-----------|------------|---------------|

**Previous** | Next | **Post New** | **Respond** | View Replies
Favorite Boardmarks| No boardmarks have been placed

**Message Board Search**                  **Board Directory**

[          ]  [  Search!  ]          [ Computer-Related ]  [  Go!  ]
⦿ Symbol  ◯ Subject  ◯ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



# RagingQuotes.com

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

🅧 Real Time Quote    ⊙Chart    ✉Free E-Mail    ❷Raging HITT Links

**< Previous**              **Respond**              **Next >**

By: mayor                    Tuesday, 11 May 1999 at 11:43 AM EDT
Reply To: 3004 by jb144              Post # 3007 of 9234

**HITT Update**
Last    5 5/16
Chg.    + 3/16
%      +3.65%
Time    15:53
Detailed | Real-Time

[Get Quote]

Nasdaq delayed 15
minutes, 20 min.
otherwise.

**Your $0.02
Wanted!**
Why just lurk?
Get in the ring.
Click Here

I would like to see how they are going to pull this off. They LIED to the SEC. Notorious shorters on SI are shorting to $3.00. I have watched the group led by Mr. Pink, and they are rarely wrong. Maybe 1 out of 10 times.

You decide what to do, but when I see a company has lied to the Securities and Exchange Commission, it sends up huge red flags regarding the safety of my investment.

Mayor

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

**Previous | Next | Post New | Respond | View Replies**

**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**              **Board Directory**
[                    ] [Search!]      [Computer-Related ▼] [Go!]
⦿ Symbol  ○ Subject  ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



# RagingQuotes.com

| Home | Register | Community | My Bull | Login | **Logout** | RT Quotes |

*Thank you for visiting Raging Bull. Due to high volume, you may experience some problems with the message boards today. We apologize for this inconvenience and we appreciate your patience and understanding as we work to remedy the situation.*

METOALORE.COM **(HITT)**    Message List

| Real Time Quote | Chart | Free E-Mail | Raging HITT Links |
| < Previous | Respond | | Next > |

HITT Update
Last    5 $1/_{16}$
Chg.

**By:** mayor                  **Thursday, 20 May 1999 at 1:09 PM EDT**
**Reply To:** 7329 by Acts2           Post # 7347  of 8307

% Time    15:58
Detailed | Real-Time

Get Quote

Nasdaq delayed 15 minutes, 20 min. otherwise.

>Naw, limberlegs, mayor just expressed his fear and his opinion.

You are correct. I expressed an opinion. But fear? Hardly. It wasn't scary to ride SCMI to SCMID to HITS to HITT and sell for a 700% profit. Would it be scary to jump in now? With FRAUD hanging over the head of this company? Nah, not scary. A bit foolish if you ask me.

Go ahead. Ask any brokerage firms if they are recommending HITT to their clients. Ask the institutional investors if they are buying HITT. You will get a resounding NO! You know why? FRAUD FRAUD FRAUD.

Pretty simple to read between the lines here. You "may" hit it big if enough foolish people throw money at this dog, but more than likely, you will end up with a pile of red on your balance sheet.

IMHO,

Mayor

Your $0.02 Wanted! Why just lurk? Get in the ring. Click Here

| BoardMark | MemberMark | Ignore Poster |

**Previous** | **Next** | **Post New** | **Respond** | **View Replies**
Favorite Boardmarks| No boardmarks have been placed

**Message Board Search**                    **Board Directory**

[          ]  [ Search! ]              [ Computer-Related ]  [ Go! ]
● Symbol  ○ Subject  ○ Member

Home  | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



**drkoop** **Dr. Nancy Snyderman**

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)     Message List

| 🔵 Real Time Quote | 📈 Chart | ✉ Free E-Mail | 🔵 Raging HITT Links |

**< Previous**                    **Respond**                    **Next >**

| By: mayor | Thursday, 20 May 1999 at 4:59 PM EDT |
| Reply To: None | Post # 7449 of 9540 |

**Enter Symbol to get a Quote**

Nasdaq delayed 15 minutes, 20 min. otherwise.

Another SCAM. And you aren't going to make many friends spamming the boards.

Mayor

*(Voluntary Disclosure: Position- No Position)*

**Your $0.02 Wanted!** Why just lurk? Get in the ring. Click Here

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

**Previous** | **Next** | **Post New** | **Respond** | View Replies

**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                    **Board Directory**

[                    ] [Search]            [Computer-Related ▼] [Go!]

● Symbol   ○ Subject   ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

Case 8:99-cv-01387-RAL    Document 7    Filed 12/30/99    Page 86 of 120 PageID 218

 

**drkoop**.com

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSG____ ___ ___ (HITT)    Message List

| 🔴 Real Time Quote | ◐ Chart | ✉ Free E-Mail | 🌐 Raging HITT Links |

**< Previous**                    **Respond**                    **Next >**

By: mayor                          Tuesday, 11 May 1999 at 11:37 AM EDT
Reply To: 2994 by runbob                    Post # 2999 of 9541

**Enter
Symbol to
get a Quote**

Nasdaq delayed 15
minutes, 20 min.
otherwise.

**Your $0.02
Wanted!**
Why just lurk?
Get in the
ring.
Click Here

I got out this morning and am NOT short. However, I don't think people
recognize the gravity of the situation here. FRAUD, people, FRAUD.
Whether or not this is directly related to HITT, it IS going to affect to
company. It may null and void the Life Foundation Trust agreement and it
will almost certainly kill the NASDAQ application.

To everything there is a season...

Mayor

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

**Previous** | **Next** | **Post New** | **Respond** | View Replies

**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                    **Board Directory**

[                    ] [ Search! ]          [Computer-Related ▼] [ Go! ]

⦿ Symbol    ○ Subject    ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

# EXHIBIT

# F

//www.techstocks.com/~wsp/investor/reply-942...

**SI** | Inbox | Folders    Bookmarks | People    Hot | New Subjects    Options | Profile

Computers&Peripherals - Software - Communications - Semiconductors

Silicon Investor

# A "WIN-WIN" INVESTMENT

P-12

Talk : Misc (General) : Mr. Pink's Picks: selected event-driven value investments

| Previous | Next | Respond | Become a Member of Silicon Investor!

Next

Previous

To: Mshater (8364)                     Sunday, May 9 1999 9:37PM ET
From: Mr. Pink                          Reply # 8366 of 9054

A "flying turd" is a company that Mr. Pink is believes will rise in spite of a
valutaion difficult to arrive at by traditional valuation measures. A T3/f is either a
fraud or overvalued company that Mr. Pi&k, in His infinite wisdom believes is
poised to fall.

He will do some work on this potential turd but for now withholds His regal
opinion.

MP

| Previous | Next | Respond | View reply to this message

View SubjectMarks                    Bookmark this Subject

Discussion | People | MetaCrawler          ⦿ Subject Titles Only
                                           ◯ Full-Text
[_____] | Search          ◯ This Subject Only

| Home | Charts | StockTalk | Groups | Spotlight | Profiles | Quotes |

Send questions and feedback to webmistress@techstocks.com

Terms of Use

EXHIBIT

F

<u>SI</u> <u>Inbox (1)</u> | <u>Folders</u>    <u>Bookmarks</u> | <u>People</u>    <u>Hot</u> | <u>New Subjects</u>    <u>Options</u> | <u>Profile</u>

**Portfolios:** - [<u>Create a WatchList of your favorite stocks!</u> ]

<u>Talk</u> : <u>Misc (General)</u> : <u>Mr. Pink's Picks: selected event-driven value investments</u>

| <u>Previous</u> | <u>Next</u> | <u>Respond</u> |

Next

Prev

To: <u>Jeffry White</u> (8408 )                Tuesday, May 11 1999 11:15AM ET
From: <u>Mr Pink</u>                              Reply # 8411 of 9397

To All: 4.00pm Announcement cancelled Blooomberg beat Mr. Pink to story on
HITT. Heading to single digits but no longer T4/f; revised to t3/f after price drop.
Target $3.00

Here are a few links from SNAP search on technology chief and convicted scamster
Dorian Reed

Dorian Reed Links

A Snap search yields many interesting links

http://nscp.snap.com/search/directory/results/1,61,nscp-0,00...

Including:

FTC brings fraud charges against mass e-mailer
http://www5.zdnet.com/zdnn/content/zdnn/0305/291985.html

FTC Sues Spammer
http://www.internetsurfer.com/April98/ap9804.htm

FTC Sues Spammer; Alleges Business Opportunity Falsely Promoted In Unsolicited
Commercial E-Mail
http://www.mlmlaw.com/news/netopp/ibb.htm

Here is the link on the actual FTC Action.

http://www.ftc.gov/os/1998/9803/complain.htm

ga.to/mmf/mmfow/report1.html

Sorry that this was disseminated ahead of the Day of Reckoning as foretold by Mr.
Pin*. Mr. P!nk did not alert Bloomberg...He is saddened that He could not share
this with His followers and minions.

There will be more scams in the future; but ones this juicey come up but a few times

a year.

Mr. Pink

---

| Previous | Next | Respond | View 3 replies to this message

**View SubjectMarks**                    Bookmark this Subject

**Discussion** | People | MetaCrawler

○ Subject Titles Only
○ Full-Text
○ This Subject Only

[                    ]  [Search]

| Home | Charts | StockTalk | Groups | Spotlight | Profiles | Quotes |

Send questions and feedback to webmistress@techstocks.com

Terms of Use

SI | Inbox | Folders | Bookmarks | People | Hot | New Subjects | Options | Profile
Computers&Peripherals - Software - Communications - Semiconductors

The best investment.

| 30-day trial ▾ | Go! |

Talk : $5 and Under : HITSGALORE.COM (HITT)

| Previous | Next | Respond | Become a Member of Silicon Investor!

Next

To: Pluvia (497)                              Tuesday, May 11 1999 1:16PM ET
From: Mr. Pink                                        Reply # 501    of 1527

Prev

Or if someone bothered to search on these criminals, they could have found this illuminating site.

http://www.ga.to/mmf/mmfow/report1.html

You folks that were long were greedy and stupid....listen to Made Men such as Pluvia or Mr. Pink Himself

MP

| Previous | Next | Respond | View 2 replies to this message

Quotes - News - Discussion - $5 and Under
View SubjectMarks                    Bookmark this Subject

## HITSGALORE.COM INC (OTC: HITT)                    Time: 3:57PM

| Last Trade | Change | Bid | Ask | Volume |
|---|---|---|---|---|
| $6\,^1/_8$ | | $6\,^1/_8$ | $6\,^3/_{16}$ | $^0 219,700_0$ |

| Prev.Close | Open | Day Range | Last Tick | Avg.Volume |
|---|---|---|---|---|
| $6\,^{15}/_{16}$ | $7\,^3/_8$ | $5\,^7/_8 - 7\,^3/_{16}$ | $^0_0$ | $^0 481,400_0$ |

52-week range: $3\,^{13}/_{16} - 20\,^{11}/_{16}$

Discussion | People | MetaCrawler          ⦿ Subject Titles Only
                                          ○ Full-Text
| [            ] | Search |                ○ This Subject Only

| Home | Charts | SI TALK | Groups | Spotlight | Profiles | Quote |

Send questions and feedback to webmistress@techstocks.com

Terms of Use

SI: Mr. Pink's Picks: selected   (#9236/9397)

---

**SI** Inbox (1) | Folders      Bookmarks | People      Hot | New Subjects      Options | Profile

**Portfolios:** - [Create a WatchList of your favorite stocks! ] 🎲

Talk : Misc (General) : Mr. Pink's Picks: selected event-driven value investments

| Previous | Next | Respond |

Next

Prev

To: Dr. Voodoo (9224 )                 Thursday, May 27 1999 8:18AM ET
From: Mr. Pink                                    Reply # 9236 of 9397

sHITT 10K is out and it is hysterical!!!

These criminals have no shame!!!!

http://www.FreeEDGAR.com/Search/FilingsResults.asp?CIK=94985...

These crooks belong in Jail!

Mr. P$nk

No disclaimer, this is not opinion but a fact and if company doesn't like it, please
sue Him; discovery will be a treat!

---

| Previous | Next | Respond | View reply to this message

**View SubjectMarks**                              **Bookmark this Subject**

**Discussion** | People | MetaCrawler          ⦿ Subject Titles Only
                                              ○ Full-Text
[                    ] [        ]             ○ This Subject Only 🎲

**Home** | **Charts** | **StockTalk** | **Groups** | **Spotlight** | **Profiles** | **Quotes**

Send questions and feedback to webmistress@techstocks.com

Terms of Use

<u>SI</u>    <u>Inbox (1)</u> | <u>Folders</u>    <u>Bookmarks</u> | ......    <u>Hot</u> | <u>New Subjects</u>    <u>Options</u> | <u>Profile</u>

**Portfolios:** - [ ................................ ] 

<u>Talk</u> : <u>Misc (General)</u> : <u>Mr. Pink's Picks: selected event-driven value investments</u>

| <u>Previous</u> | <u>Next</u> | <u>Respond</u> |

---

**To:** <u>Jean-Philippe Chevalier</u> (<u>9248</u> )         Thursday, May 27 1999 12:57PM ET
**From:** .. ....                                  Reply # | 9250 |  of 9264

It's official, David Evans of Bloomberg News wins the prestigious Pinky Award for
outstanding journalism on the sHITT story. Mr. Evans has bravely reported on
numerous frauds including BHUB, CLCX, LHSP, ABTX etc.

On behalf of the associates, affiliates, operatives in the field and other allied members of
Mr. P$nk's conspiracy, Congratulations, Mr. Evans!

Mr. P$nk

---

| <u>Previous</u> | <u>Next</u> | <u>Respond</u> | <u>View reply to this message</u>

### <u>View SubjectMarks</u>                    <u>Bookmark this Subject</u>

**Discussion** | <u>People</u> | <u>MetaCrawler</u>          ◉ Subject Titles Only
                                         ○ Full-Text
| _____ |  Search          ○ This Subject Only

| Home | Churn | .......... | Groups | Coolight | Profiles | .... |

Send questions and feedback to <u>webmistress@techstocks.com</u>

<u>Terms of Use</u>

| Previous | Next | Respond |

Next

Previou

---

**To:** bob sims (1537 )                          Thursday, May 27 1999 10:20AM ET
**From:**                                         Reply # 1538    of 1666

**Great line from the 10K**

Even sHITT's auditors can see they are going out of business.

These conditions raise
substantial doubt about the Company's ability to continue as a going concern.

Mr. P$nk

read the rest of the document, as funny as a barrel of monkeys

---

| Previous | Next | Respond | View 4 replies to this message

Quotes - News - Discussion - $5 and Under
View SubjectMarks                          Bookmark this Subject

## HITSGALORE.COM INC (OTC: HITT)                Time: 4:00PM

| Last Trade | Change | Bid | Ask | Volume |
|---|---|---|---|---|
| 5 1/16 | | 5 1/32 | 5 7/32 | 0571,8000 |

| Prev.Close | Open | Day Range | Last Tick | Avg.Volume |
|---|---|---|---|---|
| 6 1/8 | 6 3/16 | 4 9/16 - 6 3/16 | 0-0 | 0481,4000 |

52-week range: 3 13/16 - 20 11/16

Discussion | People | MetaCrawler        ● Subject Titles Only
                                          ○ Full-Text
[                    ]  Search            ○ This Subject Only

| Home | Charts |        | Groups |        | Profile | Support |

Send questions and feedback to webmistress@techstocks.com

Terms of Use

**SI**   Inbox (1) | Folders    Bookmarks |   :   Hot | New Subjects    Options | Profile
**Portfolios:** - [Create a WatchList of your favorite stocks! ]

Talk : $5 and Under :

| Previous |    | Respond |

---

**To:** Auric Goldfinger (1582 )                    Thursday, May 27 1999 2:29PM ET
**From:**                                            Reply # | 1593 |  of 1666                 Previou

**So, it would not be innacurate to say that the company is run by CRIMINALS.**

**MP**

---

| Previous | Next | Respond | View reply to this message

Quotes - News - Discussion - $5 and Under

**View SubjectMarks**                              **Bookmark this Subject**

# HITSGALORE.COM INC (OTC: HITT)                    Time: 4:00PM

| Last Trade $5 \frac{1}{16}$ | Change | Bid $5 \frac{1}{32}$ | Ask $5 \frac{7}{32}$ | Volume $0571,800_0$ |
|---|---|---|---|---|
| Prev.Close $6 \frac{1}{8}$ | Open $6 \frac{3}{16}$ | Day Range $4 \frac{9}{16} - 6 \frac{3}{16}$ | Last Tick $0_0$ | Avg.Volume $0481,400_0$ |

**52-week range: 3 $\frac{13}{16}$ - 20 $\frac{11}{16}$**

**Discussion** | People | MetaCrawler           ⦿ Subject Titles Only
                                                 ○ Full-Text
[                    ]  [ Search ]              ○ This Subject Only

| Home | Charts |    | Groups | Spotlight | Profiles |    |

**Send questions and feedback to** webmistress@techstocks.com

Terms of Use

# EXHIBIT

# G

**SI** Inbox (1) | **Folders**        Bookmarks | People        Hot | New Subjects        Options | Profile

**Portfolios:** - [Create a WatchList of your favorite stocks! ]

Talk : **Overvalued** : Anthony @ Equity Investigations. Dear Anthony.

| **Previous** | **Next** | **Respond** |

Next

Prev

To: rodney beasley (32424 )          Saturday, May 8 1999 5:20PM ET
From: Mshater                        Reply # 35399 of 38649

Are you still following this?

http://127.0.0.1:3456/SI/~wsapi/investor/reply-7883751

It is now HITT and they have ran it up to 15.

with 50 million shares out, it looks like a true scam.

...more to come.

**MH**

| **Previous** | **Next** | **Respond** |

**View SubjectMarks**                    **Bookmark this Subject**

**Discussion** | People | MetaCrawler          ⦿ Subject Titles Only
                                              ○ Full-Text
                                              ○ This Subject Only

**Home   Charts   StackTalk   Groups   Spotlight   Profiles   Quotes**

Send questions and feedback to webmistress@techstocks.com

Terms of Use



EXHIBIT

G

**SI** | Inbox (1) | **Folders**    **Bookmarks | People**    **Hot | New Subjects**    **Options | Profile**

**Portfolios:** - [Create a WatchList of your favorite stocks! ] 🔒

Talk : Overvalued : Anthony @ Equity Investigations. Dear Anthony

| Previous | Next | Respond |

Next

Prev

**To:** Bill Ulrich (35417 )
**From:** Mshater

Sunday, May 9 1999 12:35PM ET
Reply # 35419 of 38648

*When he was running the 'yougotmoney' thingie, a site called MMF*

Thanks, we now have an official criminal running a scam.

hitsgalore.com is registered to:

Reports Galore (HITSGALORE-DOM)
11338 Kenyon Way Suite B-172
Alta Loma, CA 91701
US
Administrative Contact:
Reed, D (DR6993) reportsgalore@REPORTSGALORE.COM
909-941-9824 (FAX) 909-944-9832

D. Reed or Dorian Reed. Same as:
http://ga.to/mmf/mmfow/report22.html

reportsgalore is registered to:

I-WONDER (REPORTSGALORE-DOM)
11338 KENYON WAY SUITE B172
ALTA LOMA, CA 91701
US

Domain Name: REPORTSGALORE.COM

Administrative Contact:
Anderson, Susan (SA4075) **dorian@IWONDER.NET**
909-941-9567

Dorian Reed, who ran this scam:

http://www.ftc.gov/opa/1998/9803/ibb.htm
http://www.ftc.gov/os/1998/9803/complain.htm

MH

Case 8:99-cv-01387-RAL     Document 7     Filed 12/30/99     Page 99 of 120 PageID 231

MH

| Previous | Next | Respond | View reply to this message

### View SubjectMarks                              Bookmark this Subject

**Discussion** | People | MetaCrawler                 ⦿ Subject Titles Only
                                                      ○ Full-Text
[                                    ] [  Search  ]    ○ This Subject Only

**Home**  **Charts**  **StockTalk**  **Groups**  **Spotlight**  **Profiles**  **Quotes**

Send questions and feedback to webmistress@techstocks.com

Terms of Use

<u>SI</u>    <u>Inbox (1)</u> | <u>Folders</u>    <u>Bookmarks</u> |              <u>Hot</u> | <u>New Subjects</u>    <u>Options</u> | <u>Profile</u>
**Portfolios:** - [                                              ] 🆕

<u>Talk</u> : <u>Misc (General)</u> : <u>Mr. Pink's Picks: selected event-driven value investments</u>

| <u>Previous</u> | <u>Next</u> | <u>Respond</u> |                                              <u>Next</u>

**To:**        (<u>8364</u> )                          Sunday, May 9 1999 2:20PM ET        <u>Previou</u>
**From:**       .                                     Reply # | 8365 |    of 9343

**This Dorian Reed is scum, prying on senior citizens:**

<u>http://ga.to/mmf/mmfow/report3.html</u>

**We need to take this guy down.**

**MH**

| <u>Previous</u> | <u>Next</u> | <u>Respond</u> |

**View SubjectMarks**                          **Bookmark this Subject**

**Discussion** | <u>People</u> | <u>MetaCrawler</u>         ⦿ Subject Titles Only
                                              ◯ Full-Text
[                         ]  [ **Search** ]    ◯ This Subject Only 🆕

| | | | | | | |
|---|---|---|---|---|---|---|

**Send questions and feedback to** <u>webmistress@techstocks.com</u>

<u>Terms of Use</u>





| Home | Boards | Community | Mail | **Login** | Logout | RT Quotes |

**(HITT)**    Message List

| 🌀 **Real Time Quote** | 🌀 **Chart** | 🌀 **Free E-Mail** | 🌀 **Raging HITT Links** |

**HITT Update**
**Last** 6 ¹/₈
**Chg.**

Respond                                    Next >

**%**
**Time** 15:57
Detailed | Real-Time

**By:** mshater                         **Monday, 10 May 1999 at 2:02 PM EDT**
**Reply To:** 2705 by BonsaiSeattle          Post # 2706  of 8099

_____
**Get Quote**
Nasdaq delayed 15
minutes, 20 min.
otherwise.

>>>MH, Do your own DD, find your own sources,

Another poster who joined RB in early March. What hypester.

THIS IS A SCAM

Bet only what you can lose.

MH

**Your $0.02**
**Wanted!**
Why just lurk?
Get in the ring.
Click Here

| BoardMark | MemberMark | Ignore Poster |

Previous | **Next** | Post New | Respond | View Replies
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                    **Board Directory**

[_____]  [  Search!  ]          [ Computer-Related ]  [  Go!  ]
⦿ Symbol  ○ Subject  ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



# DIHYDROHEXAMINE

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

| 🔵 Real Time Quote | 🔵 Chart | 🔵 Free E-Mail | 🔵 Raging HITT Links |

**Enter Symbol to get a Quote**

**< Previous**              **Respond**              **Next >**

By: **mshater**                    Friday, 14 May 1999 at 8:42 PM EDT
Reply To: 5427 by jwall36              Post # 5663 of 9536

Nasdaq delayed 15 minutes, 20 min. otherwise.

Lurkers,

The longs are here to SCAM you. They have MILLIONS of shares to sell you.

Please don't make millionaires out of scam artists that steal from the elderly:
**A MUST READ**
http://ga.to/mmf/mmfow/report1.html

This guy is SCUM. He deserves to go to jail. PLEASE!!!!!

MH

**Your $0.02 Wanted!** Why just lurk? Get in the ring. Click Here

---

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

**Previous** | **Next** | **Post New** | **Respond** | View Replies

**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                    **Board Directory**
[                    ]  [SEARCH]        [Computer-Related ▾]  [GO]
⦿ Symbol  ○ Subject  ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions




**RAGING BULL**

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

---

🄠 Real Time Quote    🄒Chart    🄒Free E-Mail    🄒Raging HITT Links

| **< Previous** | **Respond** | **Next >** |
|---|---|---|

By: mshater
Reply To: 2602 by LoolieBelle

Sunday, 16 May 1999 at 4:09 PM EDT
Post # 5992 of 6002

**HITT Update**
Last    7 -3/32
Chg.    -2 23/64
%    -24.84%
Time    16:01
Detailed | Real-Time

Get Quote

Nasdaq delayed 15 minutes, 20 min. otherwise.

Where did LoolieBelle go?

who said "all I know is that I have known Steve Bradford for many years and a finer Christian man you'll never meet.."

So many aliases.... so many scams.

MH

*(Voluntary Disclosure: ST Rating- **Strong Sell**; LT Rating- **Strong Sell**)*

**Your $0.02 Wanted!** Why just lurk? Get in the ring. Click Here

---

BoardMark    MemberMark    Ignore Poster

---

**Previous | Next | Post New | Respond | View Replies**

**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**
[            ] Search!
⦿ Symbol  ○ Subject  ○ Member

**Board Directory**
[Computer-Related ▾]  Go !

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

SI Inbox (1) | Folders    Bookmarks | People    Hot | New Subjects    Options | Profile

**Portfolios: -** [Create a WatchList of your favorite stocks! ]

Talk : Brokers/Resources : Waterhouse Securities

| Previous | Next | Respond |

Next

Prev

To: Mama Bear (1357 )                    Thursday, Jun 10 1999 1:09PM ET
From: Mshater                            Reply # 1358 of 1379

Barb,

You've shorted BB stock at Waterhouse haven't you.

I had NCDR and HITT shorted and they have now removed them saying they were
an illegal short! They have removed the trades and acted like they had never existed
(meaning they covered and pocketed the diff). This is about 7 grand in profits which
is a lot for me.

I have only shorted and covered about 15 other BB stocks there.

Anybody know my options besides getting another broker? These guys are thieves.

MH

| Previous | Next | Respond | View 5 replies to this message

View SubjectMarks                        Bookmark this Subject

**Discussion** | People | MetaCrawler          ⦿ Subject Titles Only
                                              ○ Full-Text
[                              ]  [search]    ○ This Subject Only

| Home | Charts | StockTalk | Groups | Spotlight | Profiles | Quotes |

Send questions and feedback to webmistress@techstocks.com

Terms of Use



**drkoop** **Dr. Nancy Snyderman**

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

⊗ Real Time Quote      ⊙ Chart        ⊙ Free E-Mail      ⊙ Raging HITT Links

**< Previous**                              **Respond**                                **Next >**

By: **mshater**                           Saturday, 15 May 1999 at 11:04 PM EDT
Reply To: **5852** by **bks**                      Post # `5919` of 9536

Enter Symbol to get a Quote

Nasdaq delayed 15 minutes, 20 min. otherwise.

Your $0.02 Wanted! Why just lurk? Get in the ring. Click Here

---

Dorian, we know it is you.

Get lost you scum bag. Quit trying to rip people off. You are slime.

**MH**

*(Voluntary Disclosure: Position- No Position; ST Rating- Strong Sell; LT Rating- Strong Sell)*

---

BoardMark          MemberMark          Ignore Poster          Report TOS Violation

**Previous** | **Next** | **Post New** | **Respond** | **View Replies**

**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                     **Board Directory**

[                    ]  [          ]        [Computer-Related ▾]  [ GO ]

● Symbol    ○ Subject    ○ Member

Home  | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

1



RECYCLED PAPER



# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

99-1387-CIV-T-26c

## I. (a) PLAINTIFFS
HITSGALORE.COM, INC.

## DEFENDANTS
JANICE SHELL, and John Does 1-100

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Pinellas County
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Brazoria Co., TX
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Carl F. Schoeppl, Esq., Schoeppl & Burke, PA
4800 North Federal Highway, Suite 210-A
Boca Raton, Florida 33431-5176
(561) 394-8301

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☒ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**HABEAS CORPUS:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This action seeks monetary and injunctive relief against the Defendants for libel, tortious interference, and conspiracy. This court has jurisdiction pursuant to 28 U.S.C. Section 1332 (Diversity).

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 20,000,000

CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  June 14, 1999

SIGNATURE OF ATTORNEY OF RECORD
*Carl F. Schoeppl*
Carl F. Schoeppl, Trial Counsel, Schoeppl & Burke, P.A.

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____

The JS–44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
HITSGALORE.COM, INC.

## DEFENDANTS
JANICE SHELL, and John Does 1–100

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Pinellas County**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **Brazoria Co., TX**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Carl F. Schoeppl, Esq., Schoeppl & Burke, PA
4800 North Federal Highway, Suite 210-A
Boca Raton, Florida 33431-5176
(561) 394-8301

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☒ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury — Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS — Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
  HABEAS CORPUS:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This action seeks monetary and injunctive relief against the Defendants for libel, tortious interference, and conspiracy. This court has jurisdiction pursuant to 28 U.S.C. Section 1332 (Diversity).

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 20,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE June **14**, 1999

SIGNATURE OF ATTORNEY OF RECORD
*Carl F. Schoeppl*
Carl F. Schoeppl, Trial Counsel, Schoeppl & Burke, P.A.

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____

# EXHIBIT

# H



| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

Real Time Quote    Chart    Free E-Mail    Raging HITT Links

**< Previous**     **Respond**     **Next >**

By: **PaulKersey**           Tuesday, 11 May 1999 at 9:27 AM EDT
Reply To: **2915** by **spydude**         Post # 2917 of 9444

**Enter Symbol to get a Quote**

Get Quote

Nasdaq delayed 15 minutes, 20 min. otherwise.

**MAJOR TRUST ANNOUNCEMENT #2.**
The Paul Kersey Lifesaver (You can) Trust (me) has decided to commit 10% of its worth(in dirt) to a bulletin board company with no SEC filings and no audited data whatsoever in return for restricted shares that can not be traded for months at a current valuation of 50% above fair market value. We think this is a wise decision on our behalf and represents a great bargain in the BB market of value and legitimacy. The trading symbol is SCAM. Everyone else please feel free to mimic our Warren Buffet style trading decision by forwarding all your cash to SCAM.

**Your $0.02 Wanted!** Why just lurk? Get in the ring. Click Here

BoardMark     MemberMark     Ignore Poster     Report TOS Violation
**Previous** | **Next** | **Post New** | **Respond** | **View Replies**
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**        **Board Directory**

[ Search! ]        Computer-Related    [ Go! ]

● Symbol    Subject    Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

EXHIBIT

H




| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)   Message List

🔵 Real Time Quote          🔵 Chart                    🔵 Free E-Mail              🔵

**< Previous**                          **Respond**

By: PaulKersey                                          Tuesday, 11 May 19
Reply To: 2974 by PaulKersey                                              P

### SEC NON DISCLOSURE

http://quote.bloomberg.com/analytics/bquote.cgi?story_num=46839441&view=story&version

"In the merger agreement, Hitsgalore.com said there were no suits or governmental
investigations against any of its officers, directors or employees. It didn't disclose the FTC's
case against Reed in filings with the Securities and Exchange Commission."

In case anyone doesn't think this is serious. What do you think happens when the SEC revie
filings, specifically ones regarding known fraud artists. The possibility of a trading halt and o
immense and imminent.

*(Voluntary Disclosure: ST Rating- **Strong Sell**; LT Rating- **Strong Sell**)*

BoardMark                    MemberMark                    Ignore Poster                    Re

**Previous** | **Next** | **Post New** | **Respond** | **View Replies**
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                **Board Directory**

[_____]  [ Search! ]            [ Computer-Related ]    [ Go! ]

● Symbol    Subject    Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



Tell me how to get a FREE 20 Meg Web site ▾ Go!



| ____ | Register | Services | | Login | _____ | _____ |

## STOCKALORE.COM (HITT)   Message List

| 🌐 Real Time Quote | 🌐 Chart | 🌐 Free E Mail | 🌐 Raging HITT Links |

< Previous                    Respond                    Next >

HITT Update
Last          6 1/8
Chg.

By: PaulKasen          **Tuesday, 11 May 1999 at 11:23 AM EDT**
Reply To: 2964 by mavor          Post # 2969 of 8103

Does anyone think that pending Life Foundation Trust deal is still in the works?
More appropriately does anyone think the Life Foundation Trust ever existed?

What does anyone think is the fair value of a scam? This one is currently at $500,000,000.
Would anyone disagree if I said that this is still ridiculously overvalued at $10?

*(Voluntary Disclosure: ST Rating- Strong Sell; LT Rating- Strong Sell)*

| BoardMark | MemberMark | Ignore Poster |

**Previous** | Next | **Post New** | **Respond** | **View Replies**
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**
[          ]  Search!
◉ Symbol  ○ Subject  ○ Member

**Board Directory**
Computer-Related ▾  Go!

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

%
Time          15:57
Detailed | Real-Time

Get Quote
Nasdaq delayed 15 minutes, 20 min. otherwise.

Your $0.02
Wanted!
Why just lurk?
Get in the ring.
Click Here



| drkoop | **CLICK HERE** |
| --- | --- |
| | Choose Medical Topic |

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)    Message List

| ⊗ Real Time Quote | ⊘ Chart | ⊗ Free E-Mail | ⊗ Raging HITT Links |
| --- | --- | --- | --- |

**< Previous**                    **Respond**                    **Next >**

By: PaulKersey                                    Tuesday, 11 May 1999 at 2:48 PM EDT
Reply To: 3205 by salc                        Post # 3215  of 9444

**HITT Update**
Last    5 6/16
Chg.    + 3/16
%    +3.65%
Time    9:32
Detailed | Real-Time

Get Quote

Nasdaq delayed 15 minutes, 20 min. otherwise.

**Your $0.02 Wanted!**
Why just lurk?
Get in the ring.
Click Here

The low down is that HITT is a SCAM.

They didn't mention in their SEC filings that Dorian Reed is a known fraud artist involved in Ponzi schemes, postal fraud, internet mailing lists, and other assorted get-rich-quick-scams. Now add that to the fact that HITT has never reported had any audited financials and guess what you have. Nothing. This entire charade was just exposed as another one of Reed's pet projects.
Go back and read some earlier posts for more details.

An SEC halt and delisting is imminent.

Anyone still waiting for the HITT press release?

*(Voluntary Disclosure: ST Rating- Strong Sell; LT Rating- Strong Sell)*

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |
| --- | --- | --- | --- |

**Previous | Next | Post New | Respond | View Replies**
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                        **Board Directory**

| Search! |    | Computer-Related | | Go! |

● Symbol    Subject    Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions



# RagingQuotes.com

| Home | Register | Community | My Stuff | **Login** | Logout | Free Quotes |

**HITSGALORE.COM (HITT)**    Message List

| ⊙ Real Time Quote | ⊙ Chart | ⊙ Free E-Mail | ⊙ Raging HITT Links |

**HITT Update**
Last    6 1/8
Chg.

< Previous                 Respond                 Next >

% 
Time        15:57

By: PaulKersey        Tuesday, 18 May 1999 at 11:00 AM EDT
Reply To: 6557 by landofplenty        Post # 6570    of 8100

Detailed | Real-Time

**Get Quotes**

Nasdaq delayed 15
minutes, 20 min.
otherwise.

Will the Fake Trust still be trading imaginary oil for shares valued at $20
when the share price is currently $3. Come on folks, please do yourselves
a favor cleanse yourselves and your soul of this mess and admit to being
duped. By remaining silent you will allow Dorian Reed to perpetrate this
crime to yet another bunch of unsuspecting victims. What all the shattered
investors need to do is contact one of the many law firms offering to
represent your mutual interests and also contact the FTC and SEC. End
this SCAM now !

**Your $0.02
Wanted!**
Why just lurk?
Get in the ring.
Click Here

Contact the FTC at:
UCE@FTC.GOV
or
http://www.ftc.gov/ftc/complaint.htm

Contact the SEC at:
enforcement@sec.gov
or
http://www.sec.gov/enforce/comctr.htm

Contact Schiffrin & Barroway, LLP at:
Schiffrin & Barroway, LLP, Bala Cynwyd
Shareholder Relations Manager
888/299-7706 (toll free) or 610/667-7706
e-mail: info@scbclasslaw.com

Contact Weiss & Yourman at:
Weiss & Yourman
Ronald Theda, 800/437-7918 or 310/208-2800 (Los Angeles)
wyinfo@wyca.com
Mark Smilow, 888/593-4771 or 212/682-3025 (New York)
wynyc@aol.com

Contact Stull, Stull & Brody at:
Stull, Stull & Brody, Los Angeles
1-888-388-4605 (toll free)



**VISA**    **9.9%** Fixed APR    Apply Now

| Home | Register | Community | My Bull | Login | **Logout** | RT Quotes |

*Thank you for visiting Raging Bull. Due to high volume, you may experience some problems with the message boards today. We apologize for this inconvenience and we appreciate your patience and understanding as we work to remedy the situation.*

...ERIALORE.COM **(HITT)**    <u>Message List</u>

| ◑ <u>Real Time Quote</u> | ◑ <u>Chart</u> | ◑ <u>Free E-Mail</u> | ◑ <u>Raging HITT Links</u> |

HITT Update

Last    5 1/16
Chg.

<u>< Previous</u>    <u>Respond</u>    <u>Next ></u>

% Time    15:58

By: PaulKersey    **Thursday, 27 May 1999 at 7:49 PM EDT**

<u>Detailed | Real-Time</u>

Reply To: <u>8272</u> by <u>Mr.Hopkins</u>    Post # 8274   of 8307

Get Quote

Listen up Hopkinshill, there is no lawsuit pending against any poster. You've exposed yourself as yet another shill in this revolving door board of Dorian Reed personalities and ASSociates. If this message board were truly uncovered it would reveal the entire IR department of HITT lead by none other than Dorian Reed posting under the name of Mr.Hopkins. Save those amateurish scare tactics for the fellow inmates of your next federal penitentiary.

What a joke. Dorian, I would be more concerned with getting your fake passport ready instead of focusing your efforts trying to fruitlessly maintain what little shareholder(aka Dorian Reed) value remains. This is a 100% SCAM. Please RagingBull expose everyone on this board !

Nasdaq delayed 15 minutes. 20 min. otherwise.

**Your $0.02 Wanted!** Why just lurk? Get in the ring. <u>Click Here</u>

*(Voluntary Disclosure: ST Rating- Strong Sell; LT Rating- Strong Sell)*

| <u>BoardMark</u> | <u>MemberMark</u> | <u>Ignore Poster</u> |

<u>**Previous**</u> | <u>Next</u> | <u>**Post New**</u> | <u>**Respond**</u> | <u>**View Replies**</u>
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**

[        ]    [ Search! ]
◉ Symbol  ○ Subject  ○ Member

**Board Directory**

[ Computer-Related ]    [ Go! ]

<u>Home</u> | <u>Community</u> | <u>Free Email</u> | <u>My Bull</u> | <u>Login</u> | <u>Logout</u> | <u>RT Quotes</u> |

Copyright 1997-99 <u>Raging Bull, Inc.</u> All Rights Reserved
<u>Terms and Conditions</u>

 

Home | Register | Community | ... | **Login** | ... | ... |

___ ____ (GDIS)    Message List

Real Time Quote          Chart          Free E-Mail

< Previous                    Respond

**By:** PaulKersey                                    Saturday, 5 Jun 19
**Reply To:** 1451 **by** kryptonite                              Po

kryptonite, if you don't know the HITT story then it would be inappropriate to make a quick po
it. You should hope that GDIS is no HITT because HITT was exposed as one of the biggest s
Here are some articles if you truly wish to know about the SCAM that is HITT and why everyo
http://quote.bloomberg.com/analytics/bquote.cgi?story_num=48603007&view=story&version:

http://quote.bloomberg.com/analytics/bquote.cgi?story_num=49298622&view=story&version:

They are a SCAM run by a convicted felon that is now in the process of withdrawing all its SE
of the associated fraud. It stands in the face of being delisted/halted.

Please do your homework as I have done with HITT and GDIS.

BoardMark          MemberMark          Ignore Poster          Res

Previous | Next | Post New | Respond | View Replies
Favorite Boardmarks | No boardmarks have been placed

**Message Board Search**          **Board Directory**
[          ]  [ Search! ]      [ Computer-Related ]  [ Go! ]
● Symbol  ○ Subject  ○ Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions





| Home | Register | Community | My Bull | **Login** | Logout | RT Quotes |

HITTGLORE.COM **(HITT)**    **Message List**

| 🕐 Real Time Quote | 📈 Chart | ✉ Free E-Mail | ⦿ Raging HITT Links |

< **Previous**                **Respond**                **Next >**

**By:** RajKersey

**Reply To:** 9103 by RAINCHECK

Saturday, 5 Jun 1999 at 3:10 PM EDT

Post # 9105  of 9111

**HITT Update**
Last   5 1/2
Chg.   + 5/16
% +6.03%
Time   15:46
Detailed | Real-Time

Raincheck, that truly was a last breath. Comparisons to AOL, YHOO, and INTC probably may be considered shill tactics by some people at this point in time. I don't think Andy Grove spent time in a federal prison for wire fraud nor do I believe that AOL had to withdraw all of its past SEC filings because the stench of fraud was so overwhelming that noone dare be associated with the company.

This is truly one of the most disgusting scams operated by some of the most criminally manipulative felons and supported by the most lowest form of shill. The fact that people are still here touting this dead dog speaks volumes of your character. No sane investing person would touch this stock even if provided with free shares. What kind of person would remain on these boards to defend this now? There's only one answer and we all know what it is.

Perhaps the most disgusting part of this charade was the attempted veil of Christianity:
http://biz.yahoo.com/bw/990513/az_life_fo_1.html
"In addition, to provide financial support for the local, national and international ministries which are based on the principles of the Bible."

*(Voluntary Disclosure: ST Rating- Strong Sell; LT Rating- Strong Sell)*

| BoardMark | MemberMark | Ignore Poster | Report TOS Violation |

Previous | Next | Post New | Respond | View Replies
**Favorite Boardmarks |** No boardmarks have been placed

**Get Quote**
Nasdaq delayed 15 minutes, 20 min. otherwise.

**Your $0.02 Wanted!**
Why just lurk? Get in the ring.
Click Here

**Message Board Search**

| Search! |
⦿Symbol  ○ Subject  ○ Member

**Board Directory**

| Computer-Related ▾ | Go! |

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

  **HEALTH BREAKTHROUGHS**

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)   Message List

⊕ Real Time Quote    ⊙ Chart    ✉ Free E-Mail    ⊕ Raging HITT Links

< Previous          **Respond**                    Next >

By: PaulKersey                     Tuesday, 11 May 1999 at 10:03 AM EDT
Reply To: 2928 by stardance        Post # 2933 of 9444

It is illegal to run mail fraud and stock internet scams. Anyone pointing fingers at the person unmasking the criminals is nothing but a criminal himself.

StarD can you tell me why you are defending a known criminal, Dorian Reed, who by anyone's most basic understanding seems to be perpetrating the almost identical fraud tactics with HITT?

Please do call matthew@ragingbull because what we have here is the unearthing of a major stock touting scam. This will make an excellent cover story on the Raging Bull home page.

*(Voluntary Disclosure: ST Rating- Strong Sell; LT Rating- Strong Sell)*

BoardMark          MemberMark          Ignore Poster          Report TOS Violation
Previous | Next | Post New | Respond | View Replies
Favorite Boardmarks | No boardmarks have been placed

**Message Board Search**                **Board Directory**
[          ]  [Search!]                 [Computer-Related ▾]  [Go!]
● Symbol    Subject    Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

Copyright 1997-99 Raging Bull, Inc. All Rights Reserved
Terms and Conditions

**Enter Symbol to get a Quote**
[          ] [Get Quote]
Nasdaq delayed 15 minutes, 20 min. otherwise.

Your $0.02 Wanted! Why just lurk? Get in the ring. Click Here



**click here for**  NEW RESOURCES  **drkoop**.com

| Home | Register! | Community | My Bull | Login | Logout | RT Quotes |

## HITSGALORE.COM (HITT)   Message List

○ Real Time Quote      ○ Chart      ○ Free E-Mail      ○ Raging HITT Links

**< Previous**              **Respond**                    **Next >**

By: PaulKersey                    Tuesday, 11 May 1999 at 10:25 AM EDT
Reply To: 2942 by shadow115              Post # 2947 of 9444

**Enter
Symbol to
get a Quote**

[ Get Quote ]

Nasdaq
delayed 15
minutes, 20
min. otherwise.

**HITT IS RUN BY KNOWN CRIMINALS !**
This is a fact, not an opinion. I repeat and it is painfully obvious that anyone
defending Mr. Dorian Reed is a criminal. Why has noone come forth to
answer to the established incidents of fraud already perpetrated by Mr. Reed.

http://www.ftc.gov/opa/1998/9803/ibb.htm
"Internet Business Broadcasting and its principals claimed they operated "City
Edition"
Internet newspapers and sold opportunities to lease "billboards" or "banners"
-- essentially, slots of classified or yellow page advertising space -- that would
run on the Internet newspaper sites. In "spam" sent to would-be investors, the
defendants claimed that investors in the billboards could sublease advertising
space and earn a guaranteed return on their investment."


Does this aforementioned fraud sound familiar?
Exactly the same as HITT's "business" model.

What has HITT touted itself as?
Internet banner advertiser with "local editions.

Who is HITT run by?
Known fraud artist Dorian Reed.

Does anyone have any answers or are we just going to bury our heads in the
sand or point fingers and shout at those exposing the truth?

*(Voluntary Disclosure: ST Rating- Strong Sell; LT Rating- Strong Sell)*

**Your $0.02
Wanted!**
Why just
lurk?
Get in the
ring.
Click Here

BoardMark      MemberMark          Ignore Poster        Report TOS Violation
**Previous** | **Next** | Post New | Respond | View Replies
**Favorite Boardmarks** | No boardmarks have been placed

**Message Board Search**                    **Board Directory**

[          ]  [ Search! ]          [ Computer-Related ]  [ Go! ]
● Symbol    Subject    Member

Home | Community | Free Email | My Bull | Login | Logout | RT Quotes |

  

| Home  | Register!  | Community  | My Bull  | Login  | Logout  | RT Quotes  |

## HITSGALORE.COM (HITT)    Message List

❌ Real Time Quote        ✅ Chart        📧 Free E-Mail        ⚫ Raging H

**< Previous**                **Respond**

By: PaulKersey                                    Tuesday, 11 May 1999 at 8:
Reply To: None                                            Post # 3508

### HITT IS AN OLD DORIAN REED SCAM !

http://www.ftc.gov/opa/1998/9803/ibb.htm
"Internet Business Broadcasting and its principals claimed they operated "City Edition" Inter
newspapers and sold opportunities to lease "billboards" or "banners" -- essentially, slots of
classified or yellow page advertising space -- that would run on the Internet newspaper sites
"spam" sent to would-be investors, the defendants claimed that investors in the billboards co
sublease advertising space and earn a guaranteed return on their investment. Their spam m
touted the billboards as the "business opportunity [that] offers a solid return potential of 100.
first year with only a 25% occupancy rate," and guaranteed that 25% occupancy rate accordi
FTC complaint. The spam messages directed prospective franchisees to the defendants' Int
page or to their toll-free number. Both their spam and their Internet web site offered a "guara
return on investment, or a full refund to investors. Consumers' investments ranged from $5,0
$7,500."

Q: What's the difference between IBB and HITT?
A: NOTHING.

This guy is so pathetic that he tried to repeat the same scam, of course on a larger scale.
Notice the unbelievable similarities.
IBB sold internet advertising space.
HITT boasts that it sells internet advertising space.
IBB had local/city versions of its supposed "business".
HITT has local/city versions of its supposed "business".
IBB guaranteed investors farcical ridiculous returns on their invested dollars.
HITT claims their stock is worth more and more each day because of a "Trust" investment th
never and will never be substantiated.
IBB was busted and taken to court by the Federal governement.
HITT.......

Any answers anyone ?
Tell me what kind of people would recommend putting your dollars into this kind of scam?